# REAL SILK HOSIERY MILLS *v.* CITY OF PORTLAND ET AL.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 417. Argued April 27, 1925.—Decided May 25, 1925.

1. A municipal ordinance requiring that every person who goes from place to place taking orders for goods for future delivery and receives payment or any deposit of money in advance shall secure

a license by paying a fee and filing a bond conditioned to make final delivery of ordered goods, *held* an unconstitutional interference with interstate commerce as applied to the solicitors of a corporation engaged in manufacturing goods in another State and selling them direct to consumers on orders taken by the solicitors and sent to the home office of the corporation, the customers making advance deposits which were retained by the solicitors as their sole compensation and were credited to the customers on account of their purchases.  P. 335.

2. An expressed purpose to prevent possible frauds is not enough to justify legislation which really interferes with the free flow of legitimate interstate commerce.  P. 336.

297 Fed. 897, reversed.

APPEAL from a decree of the Circuit Court of Appeals which affirmed a decree of the District Court dismissing the bill in a suit brought by the appellant corporation to enjoin the enforcement of a city ordinance requiring its salesmen to take out licenses and file bonds for security of customers.

*Mr. John G. Milburn,* with whom *Messrs. Joseph W. Welsh, Ralph Bamberger* and *John M. Gearin* were on the brief, for appellant.

Decisions of this Court have reduced within very narrow limits the questions raised by the record in this case. *Air-Way Electric Appliance Corp.* v. *Day,* 266 U. S. 71; *Brown* v. *Maryland,* 12 Wheat. 419, 444; *Robbins* v. *Shelby Taxing Dist.,* 120 U. S. 489, 497, 498; *Texas Transport Co.* v. *New Orleans,* 264 U. S. 150, 152; *Brennan* v. *Titusville,* 153 U. S. 289, 302.

The appellant's business which is affected by the ordinance is interstate commerce.  The business consists of the obtaining of orders through representatives or solicitors in Portland from individual purchasers and the fulfillment of those orders, when received in Indianapolis, by shipment from that place direct to the purchasers in Portland.  The transaction is simply a sale and delivery in one State of goods manufactured in another State

upon an order previously given and transmitted to the State in which the goods are manufactured, and is in all respects interstate commerce. *Robbins* v. *Shelby Taxing Dist., supra; Brennan* v. *Titusville, supra.* It is clear that the interstate character of the transaction as a whole cannot be affected by the manner in which the order may be obtained or by the terms of payment for the goods ordered; and it is immaterial whether they are paid for wholly or partly in advance or on final delivery insofar as the character of the transaction is concerned. In either case the transaction is interstate commerce and the representative of the appellant obtaining the order is engaged in interstate commerce.

The ordinance is a direct burden on interstate commerce and therefore invalid. *Robbins* v. *Shelby Taxing Dist., supra; Brennan* v. *Titusville, supra; Stockard* v. *Morgan,* 185 U. S. 27; *Caldwell* v. *North Carolina,* 187 U. S. 622; *Rearick* v. *Pennsylvania,* 203 U. S. 507; *Crenshaw* v. *Arkansas,* 227 U. S. 389; *Stewart* v. *Michigan,* 232 U. S. 665; *Browning* v. *Waycross,* 233 U. S. 16; *Texas Transport Co.* v. *New Orleans,* 264 U. S. 150; *Bowman* v. *Chicago & North Western Ry. Co.,* 125 U. S. 465; *Stoutenburgh* v. *Hennick,* 129 U. S. 141; *Sioux Remedy Co.* v. *Cope,* 235 U. S. 197. The ordinance in this case concerns only solicitors who collect any portion of the purchase price payable in advance. But the fact that a solicitor collects a portion of the purchase price in advance at the time an order is given in accordance with the terms of the order does not change his status or function with respect to the interstate sale in connection with which his service has been rendered, or the interstate character of the sale. Whether an ordinance is a direct or incidental burden on interstate sales is not determinable by how the purchase price is payable. Treating the ordinance as an attempted exercise of the police power, it is not only void as imposing a direct

burden on interstate commerce, but because it is unreasonable, arbitrary and unnecessarily burdensome. *Adams Express Co.* v. *New York,* 232 U. S. 14, 31. The direct and effective way to attack and suppress such frauds as the ordinance professes to be aimed at, is by criminal prosecutions. This Court is not bound by the recitals in the ordinance or its declared purpose. *Mugler* v. *Kansas,* 123 U. S. 623; *Dobbins* v. *City of Los Angeles,* 195 U. S. 223; *La Coste* v. *Dept. of Conservation,* 263 U. S. 545. If there be any real necessity for the regulation of solicitors selling the goods of a non-resident principal it is for Congress, and not for the various States or municipalities, to pass appropriate laws for such regulation. *Robbins* v. *Shelby Taxing Dist., supra; Stoutenburgh* v. *Hennick, supra; Lemke* v. *Farmers Grain Co., supra; Bowman* v. *Chicago & North Western Railway Co.,* 125 U. S. 465; *American Express Co.* v. *Iowa,* 196 U. S. 133; *Railroad Co.* v. *Husen,* 95 U. S. 465.

The theory of the opinion of the Circuit Court of Appeals as to the local character of the service of the appellant's solicitors is untenable. This is a clear misconception of the real transaction. The solicitors are employed by the appellant. Their function is to solicit orders on behalf of the appellant, and when obtained to reduce them to writing, sign them and receive the deposit on behalf of the appellant. The orders are transmitted to the appellant through a district sales manager's office located in the City of Portland. This is the indispensable initial step in the transaction. The total purchase price is stated in the formal order. It is the sum which the purchaser is obligated to pay to the appellant for the goods. A payment of a part of the purchase price is required in advance and is paid to the solicitor, not as money due from the purchaser to the solicitor, but as part of the purchase price of the goods. The payment required is retained by the solicitor under his arrange-

ment with the appellant as compensation for his service rendered to the appellant. That he retains it instead of remitting it to his principal does not affect the purchaser. The solicitor's part in the sale is concluded when he receives the order and advance payment and sends the order to the district sales manager just as any travelling salesman's function in connection with a sale is performed when he has obtained an order and forwarded it to his principal. There is obviously no basis in the actual facts for the statements in the opinion of the court below that the solicitor " receives nothing from the plaintiff ", and " that the plaintiff has no interest in the advance payment made by the purchaser to the solicitor ", or for the description of the solicitor as " independent ", and his business as " independent and self sustaining "; or for severing the solicitor's service from each transaction of sale as an entirety and treating it as a separate and independent transaction between the purchaser and the solicitor.

The advance payment is necessary as an inducement to the purchaser to take the goods when delivered and pay the balance of the purchase price; and, in case of their rejection by the purchaser owing to a change of mind or any similar cause, to recoup the appellant for the selection and packing of the goods and the expense of forwarding them and having them returned. Experience has shown that it materially tends to hold the purchaser to his order. For this reason the advance payment is indispensable.

Facing the problem of the payment of the compensation of thousands of solicitors all over the country and an advance payment being indispensable, the natural solution of it was to fix the payment at a sum equivalent to a workable compensation to the solicitor in connection with each order and allow him to retain it, thereby saving an open account with each solicitor and remittances from

him and to him.   It is a natural and legitimate method of business and its operation in no way converts the purely interstate sales of the business into a combination of an interstate element, consisting of the receipt of the order, the transmission of the goods by mail C. O. D. as to the balance of the purchase price, and their delivery to the purchaser on payment of such balance, and of an intrastate element consisting of the obtaining of the order by the solicitor, the forwarding of it to the district manager's office for transmission to the mills, and his retention of the advance payment on the purchase price of the goods collected by him.   *Pennsylvania R. R. Co.* v. *Knight,* 192 U. S. 21; *Coe* v. *Erroll,* 116 U. S. 517; *Hall* v. *Geiger-Jones Company,* 242 U. S. 539; *Plumley* v. *Massachusetts,* 155 U. S. 461, distinguished.   To single out solicitors who collect any portion of the purchase price in advance of final delivery and subject them to discriminating and hostile legislation is a violation of the equality clause of the Fourteenth Amendment.

*Mr. Frank S. Grant,* with whom *Mr. Robert A. Imlay* was on the brief, for appellees.

The police power, from its very nature, is incapable of exact definition or limitation.   It reaches out generally to control everything which affects the health, peace, safety and morals of the people, and as new conditions arise, and as public opinion creates new standards of valuation, it will reach out in a never ending procession of legislative enactments to cope with the situation.   It is inevitable that contention will arise as to the power of the States and the power of the national Government. Hence, each individual case must, to a large extent, be decided upon its own merits.   *Welton* v. *Missouri,* 91 U. S. 275.   The State may by appropriate legislation protect local interests.   Such legislation is valid under the Commerce Clause notwithstanding that interstate

commerce may to some extent be affected. *Gibbons* v. *Ogden,* 9 Wheat. 1; *Gilman* v. *Philadelphia,* 3 Wall. 713; *Sherlock* v. *Alling,* 93 U. S. 99; *Escanaba Co.* v. *Chicago,* 107 U. S. 678; *Barbier* v. *Connolly,* 113 U. S. 27; *Walling* v. *Michigan,* 116 U. S. 446; *Philadelphia etc., S. S. Co.* v. *Penna.,* 122 U. S. 326; *In Re Rahrer,* 140 U. S. 545; *Leloup* v. *Mobile,* 127 U. S. 640; *Hebe Co.* v. *Calvert,* 246 Fed. 711; *Missouri ex rel. Barrett* v. *Kansas National Gas Co.,* 265 U. S. 298; *State* v. *Leary,* 125 Atl. (R. I.) 353.

On various phases of legislation which have been declared within the reserved powers of States, and not a regulation of interstate commerce, see especially *International Textbook Co.* v. *District of Columbia,* 35 App. D. C. 307; *Chicago R. I. & P. R. Co.* v. *Arkansas,* 219 U. S. 453; *Hennington* v. *Georgia,* 163 U. S. 299; *Nashville C. & St. L. R. Co.* v. *Alabama,* 128 U. S. 96; *United States* v. *Hart,* Pet. C. C. 390; *New Mex. ex rel.* v. *Denver & R. G. R. Co.,* 203 U. S. 38; *Compagnie Francaise, Etc.* v. *Louisiana State Board,* 186 U. S. 380; *Hebe Co.* v. *Calvert, supra;* *Hendrick* v. *Maryland,* 235 U. S. 610; *Kane* v. *New Jersey,* 242 U. S. 160; *N. Y., N. H. & H. R. Co.* v. *New York,* 165 U. S. 628; *Sherlock* v. *Alling,* 93 U. S. 99; *Erie R. Co.* v. *Williams,* 233 U. S. 685; *Lakeshore & M. S. R. Co.* v. *Ohio,* 173 U. S. 285; *Texas Transport & T. Co.* v. *New Orleans,* 264 U. S. 150; *New York ex rel. Pa. Ry. Co.* v. *Knight,* 192 U. S. 21.

The situation presented by the case at bar is not dissimilar in principle to those cases where persons engaged in interstate transportation are required by the provisions of state statutes to be examined and licensed. *Smith* v. *Alabama,* 124 U. S. 465. A presumption should be indulged in that a statute was enacted in good faith. The declared purpose of the act is to be accepted as true unless incompatible with its meaning and effect. *Flint* v. *Stone-Tracey Co.,* 220 U. S. 107. It will be contended, that

the real purpose of the ordinance is to discriminate against non-resident manufacturers in favor of local business. There is nothing in the language to justify such a contention, nor is there any allegation in the bill upon which to base such a claim. It is not alleged or claimed that the ordinance is administered with an unequal hand, so as practically to make discriminations against non-resident manufacturers. See *Yick Wo* v. *Hopkins,* 118 U. S. 356. The declared purpose is to prevent the perpetration of fraud upon the citizens of Portland by fraudulent or irresponsible solicitors. It does not discriminate against goods, nor interfere in any way with the free intercourse in goods of a sister state, nor, except in an indirect and incidental manner, with the contract for the sale of such goods. It is aimed solely, at fraudulent practices of such a nature that they are necessarily of a local and not of a national character.

It would seem not only within the power of the State, but its positive duty, to devise some method for reaching the evils of a system so freighted with opportunities for fraudulent practices. The system is enlarging in its scope from year to year. The tendency, today, is to eliminate the middle man entirely. This may be well enough, but the system has built up an immense business in soliciting which is practically the only business of that character which is unregulated and unrestricted. For years individuals, engaged in soliciting for non-resident principals, have successfully hidden behind the provisions of the federal Constitution, and it has prevented legislation designed to reach solicitors of local concerns because of the inequality of such a measure. It is said in *Plumley* v. *Massachusetts,* 155 U. S. 461: " The Constitution of the United States does not secure to anyone the privilege of defrauding the public." Preventive measures are of infinitely greater benefit to society than an uncertain criminal or civil process, after the damage is done.

*Standard Home Co.* v. *Davis*, 217 Fed. 904; Freund, Police Power, § 272, p. 260; see *Crossman* v. *Lurman*, 192 U. S. 189; *Savage* v. *Jones*, 225 U. S. 501; *Hall* v. *Geiger-Jones Co.*, 242 U. S. 539; *Merrick* v. *Halsey & Co.*, 242 U. S. 568; *Caldwell* v. *Sioux Falls Stock Yards Co.*, 242 U. S. 559.

We conclude from these cases that, in the absence of national legislation, a state statute, or municipal ordinance, designed to prevent fraudulent practices or fraudulent representations, is a valid exercise of the police power of the State in the interests of the local welfare, notwithstanding that the articles affected are articles of commerce and that interstate commerce is indirectly affected or burdened thereby. The fraud which the ordinance in question seeks to prevent is essentially a local matter and even though the act of soliciting may be an incident of interstate commerce, the indirect burden placed thereon by the ordinance does not contravene the Commerce Clause. The provisions of the ordinance are reasonably adaptable to accomplish the purpose intended—correction of this evil. The requirement of a bond insures the continuance in business of persons of character and responsibility only. The ordinance should be an assistance to commerce rather than a hindrance or burden, by eliminating the dishonest solicitor. The ordinance has to do with conduct not directly connected with any subject of commerce. There is nothing new in the principle that the personnel of business may be regulated on the basis of character and conduct. *Gundling* v. *Chicago*, 177 U. S. 183; *Bratton* v. *Chandler*, 260 U. S. 110. We have found but one case construing a statute in any degree similar to the ordinance in question. *Musco* v. *United Surety Co.*, 196 N. Y. 459. This ordinance is not distinguishable in principle from the law of Georgia which was the subject of the decision in *Western Union Telegraph Co.* v. *James*, 162 U. S. 650.

The ordinance does not violate the Fourteenth Amendment. *Merrick* v. *Halsey & Co.*, 242 U. S. 568.

*Mr. David Paine* filed a brief as *amicus curiae,* by special leave of Court.

*Messrs. James W. Bayard* and *Ralph B. Evans* filed a brief as *amici curiae,* by special leave of Court.

MR. JUSTICE McREYNOLDS delivered the opinion of the Court.

Appellant is an Illinois corporation engaged in manufacturing silk hosiery at Indianapolis, Ind., and selling it throughout the United States to consumers only. It employs duly accredited representatives in many States who go from house to house soliciting and accepting orders. When a willing purchaser is found the solicitor fills out and signs in duplicate a so-called " order blank." This obligates appellant to make delivery of the specified goods and, among other things, states—

" The mills require a deposit of $1.00 [or other specified sum] on each box listed below. Your hosiery will be mailed you by Parcel Post c. o. d., direct from the Post Office branch in our mills. Pay the balance to the postman. As the entire business of the Real Silk Hosiery Mills is conducted on the Parcel Post c. o. d. basis, our representatives cannot accept your order unless the deposit is made. We do not accept full payment in advance. Do not pay more than printed deposit."

One of the copies is left with the purchaser; the other is first sent to the local sales manager and then forwarded to the mills at Indianapolis. In response thereto the goods are packed and shipped by Parcel Post c. o. d. direct to the purchaser. The solicitor retains the cash deposit, and this constitutes his entire compensation.

The appellant employs two thousand representatives who solicit in most of the important cities and towns

throughout the Union, and has built up a very large business—$10,000,000 per annum. 'Twenty operate in Portland, Ore.

May 16, 1923, that City passed an ordinance which requires that every person who goes from place to place taking orders for goods for future delivery and rece' 'es payment or any deposit of money in advance shall secure a license and file a bond. The license fee is $12.50 quarterly for each person on foot and $25 if he uses a vehicle. The bond must be in the penal sum of $500 and conditioned to make final delivery of ordered goods, &c.

By a bill filed in the United States District Court for Oregon appellant challenged the ordinance and asked that its enforcement be restrained upon the ground, among others, that it interferes with and burdens interstate commerce and is repugnant to Art. I, § 8, Federal Constitution. The trial court upheld the enactment and sustained a motion to dismiss the bill. This was affirmed by the Circuit Court of Appeals. 297 Fed. 897.

Considering former opinions of this court we cannot doubt that the ordinance materially burdens interstate commerce and conflicts with the Commerce Clause. *Robbins* v. *Shelby Taxing District*, 120 U. S. 489, 497; *Brennan* v. *Titusville*, 153 U. S. 289; *Rearick* v. *Pennsylvania*, 203 U. S. 507; *Crenshaw* v. *Arkansas*, 227 U. S. 389; *Texas Transport Co.* v. *New Orleans*, 264 U. S. 150; *Alpha Portland Cement Co.* v. *Commonwealth of Massachusetts*, 268 U. S. 203.

"The negotiation of sales of goods which are in another State, for the purpose of introducing them into the State in which the negotiation is made, is interstate commerce." Manifestly, no license fee could have been required of appellant's solicitors if they had travelled at its expense and received their compensation by direct remittances from it. And we are unable to see that the burden on interstate

commerce is different or less because they are paid through retention of advance partial payments made under definite contracts negotiated by them. Nor can we accept the theory that an expressed purpose to prevent possible frauds is enough to justify legislation which really interferes with the free flow of legitimate interstate commerce. See *Shafer* v. *Farmers Grain Co.*, 268 U. S. 189.

The decree of the court below must be reversed. The cause will be remanded to the District Court for further proceedings in harmony with this opinion.

*Reversed.*