195 So. 356

**STATE v. BEST & CO.**

No. 35367.

Nov. 27, 1939.

Rehearing Denied April 1, 1940.

J. P. Wallace, of Shreveport, for plaintiff-appellant.

Wilkinson, Lewis, Wilkinson & Naff, of Shreveport, for defendant-appellee.

ODOM, Justice.

The defendant is a New York corporation and operates a retail and mail-order store in New York City. It has no place of

business in Louisiana, nor does it operate any store here. In October, 1938, one of its representatives brought into the City of Shreveport, this state, samples of ladies' and children's wearing apparel, and displayed them in rooms leased for that purpose from a hotel. Defendant's representative did not sell and deliver, or offer to sell and deliver, any of the articles of merchandise on display. The articles of merchandise were samples and were displayed for the sole purpose of securing orders for the retail sale of similar merchandise to local customers for future delivery from the store in New York City.

Mr. Yetter, defendant's representative, was not authorized to deliver any merchandise or to accept payment therefor. All he was authorized to do, and all that he did, was to display the samples, take orders, and forward them to the defendant in New York City. The orders were subject to the approval of the defendant at its home office. If the orders were accepted, the goods were either charged to the accounts of the customers or shipped to them C.O.D. at their option. Nothing was shipped to Mr. Yetter for delivery, but all shipments were made to the customers direct. The display of samples was advertized by the mailing of cards to prospective customers by the representative of the company, the cards setting forth the dates of the display. The defendant does not manufacture the articles sold, but the articles are taken from its general stock in New York City and are shipped from there direct to the customers. These are the admitted facts.

The State ruled defendant to show cause why it should not pay a license tax of $250, alleged to be due under Section 17, Act No. 33 of 1938, pp. 131, 134, "for the privilege of displaying samples, models, goods, wares or merchandise in the Hotel Washington-Youree at Shreveport, Louisiana, for the purpose of securing orders for the retail sale of such goods, wares or merchandise, either for immediate or future delivery". (Quotation from State's petition.)

That part of the section of the statute under which this license tax is demanded reads as follows: "Provided, further, that every person, firm or corporation, not being a regular retail merchant in the State of Louisiana, who shall display samples, models, goods, wares or merchandise in any hotel, hotel room, store, storehouse, house or other place, for the purpose of securing orders for the retail sale of such goods, wares or merchandise, or others of like kind or quality, either for immediate or future delivery, shall apply for and procure, at least thirty days in advance, a license from the Collector of Revenue for the privilege of displaying such samples, models, goods, wares or merchandise, and shall pay, in addition to all other taxes and licenses, a license tax therefor of $250.00 for each sixty days of any such display. This paragraph shall not apply to those making house to house or personal calls displaying samples and taking orders for shipment directly from the manufacturer."

Defendant in its answer admitted the facts as above stated. The defense set up in its answer is that the only business it transacted in this state was to display its

samples, take orders for goods, send the orders to New York City, there to be accepted or rejected; that, if accepted, the goods were to be shipped direct to the customers, the price to be remitted direct to the company in New York City by the customer; that such business is interstate commerce; that the State of Louisiana is without power or authority to require a license fee or to levy a tax on the privilege of engaging in such business; that such a tax is an undue burden upon, and an interference with, interstate commerce, and is therefore in conflict with the provisions of Section 8, Article I, of the Federal Constitution, which provides that Congress shall have power "To regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes".

There was judgment in the court below decreeing that the statute is unconstitutional. The State appealed.

The purpose of the law here under attack is to require all persons, firms, or corporations not being retail merchants in this state to pay a license tax for the privilege of displaying samples, models, goods, wares, or merchandise in a hotel, hotel room, or storehouse, or other place, when the purpose of making such display is to secure "orders for the retail sale of such goods, wares or merchandise, or others of like kind or quality, either for immediate or future delivery".

The license tax is not imposed for the bare purpose of displaying samples of merchandise in a hotel room or other place, but for the privilege of so displaying such wares "for the purpose of securing orders for the retail sale of such goods, wares or merchandise".

Counsel for the State has advanced a theory that, because the samples, goods, or merchandise displayed by the defendant came to rest in Shreveport and were there displayed, and because the merchandise was not then in interstate commerce, the making of the display was a local business and subject to taxation in this state. He rests his argument upon the well recognized principle, which is stated in 12 Corpus Juris, Section 153, page 109, as follows: "In the exercise of its power wholly to exclude foreign corporations, or in its discretion, to permit them to do business within the state under such conditions and restrictions as it sees fit to impose, a state may exact a license fee or tax from foreign corporations engaged in interstate commerce for the privilege of doing local or domestic business within the state, and a statute or ordinance imposing such a tax is valid when it is so worded as to cover only intra-state commerce, as where it expressly excepts interstate business."

Counsel cites the above quoted text in support of his argument that the state may exact a license tax or fee from a foreign corporation engaged in interstate commerce "for the privilege of doing local or domestic business within the state". The defendant is a foreign corporation and is engaged in interstate commerce, and the state could unquestionably exact of it a license tax for the privilege of doing a local or domestic business. So that the rule announced above would be applicable to the case at bar if it were true, as counsel argues, that the de-

fendant, by displaying its samples in a room at the hotel, thereby engaged in a local business. But, by displaying the samples under the circumstances and for the purpose disclosed by the agreed statement of facts, defendant did not engage in a local or domestic business.

■ The reason is obvious, and is this: that the displaying of the samples, which admittedly was for the purpose of securing orders for the sale of merchandise then in another state, was but a step—the first step—made in furtherance of interstate transactions. The defendant had no merchandise for sale in this state and made no sales here. The goods which it had for sale, and which its representative here offered for sale, were in the City of New York. Defendant's representative here did not, and could not under the authority delegated to him by his principal, consummate sales. All he was authorized to do, and all he did, was to solicit and take orders from local customers for the sale of articles of wearing apparel selected from the samples displayed, and send the orders so taken to defendant's main office in New York City, where the goods for sale were kept. The orders were either accepted or rejected at the option of the company. If the orders were accepted, the goods were shipped direct from the store in New York to the customer in Louisiana. These being the undisputed facts, the defendant was engaged in interstate commerce. We can see nothing in such transactions that can be regarded as a local business. Our conclusions in this respect are supported by a long and unbroken line of decisions by the United States Supreme Court and by this court.

The displaying of samples was but a means of exhibiting to prospective customers the kind and quality of the wares which defendant had for sale, to get them interested and to induce them to make orders. The goods and merchandise displayed were property which came to rest in this state when deposited for exhibit in the hotel room. But they were not deposited there for sale. They were means and instrumentalities devoted solely to the end of furthering defendant's interstate business. The displaying of them in no proper sense constituted, or contributed to, the doing of a local business.

■ Counsel for the State concedes, as indeed he must, that, if defendant's representative had taken the samples of merchandise with him from door to door and had displayed them in that way in order to induce prospective customers to make orders and had taken orders just as he did at the hotel room and for the same purpose, the business thus transacted would not be subject to the license tax levied by the act. But he thinks there is a distinction between the exhibiting of samples at a hotel room for the purpose of securing orders and the exhibiting of them from door to door for the same purpose. We do not concur in counsel's view. On principle it matters not where samples are displayed if the purpose of displaying them is to induce prospective customers to order goods to be shipped in interstate commerce. If the entire transaction is interstate in character, then each and every step taken in furtherance there-

of is likewise interstate in character. The act of exhibiting samples of goods to induce customers to take orders for the sale of merchandise is not separable from the other steps taken to consummate the interstate business. Each step is a part of one complete transaction.

In Cheney Bros. v. Com. of Massachusetts, 246 U.S. 147, 38 S.Ct. 295, 296, 62 L. Ed. 632, the Supreme Court decided the point raised and stressed by counsel for the State in the case at bar. The court was there concerned with an excise tax imposed by Massachusetts on each of seven foreign corporations on the ground that they were doing a local business in that state. Cheney Bros. was a Connecticut corporation, whose general business was manufacturing and selling silk fabrics. It maintained at Boston a selling office with one office salesman and four other salesmen who travelled through New England taking orders. The salesmen solicited and took orders subject to the approval of the home office in Connecticut. If the orders were approved by the home office, the goods were shipped direct to the purchasers. Cheney Bros. kept no stock of goods in Massachusetts, "but only samples used in soliciting and taking orders". No other business was transacted in Massachusetts. The Supreme Court said: "We do not perceive anything in this that can be regarded as a local business as distinguished from interstate commerce. The maintenance of the Boston office and the display therein of a supply of samples are in furtherance of the company's interstate business and have no other purpose. Like the employment of the salesmen, they are among the means by which that business is carried on and share its immunity from state taxation."

This case is practically on all fours with the case at bar. The case of Ozark Pipe Line Corporation v. Monier et al., 266 U.S. 555, 45 S.Ct. 184, 185, 69 L.Ed. 439, is like it in principle. The Ozark concern was a Maryland corporation which maintained its principal office in the State of Missouri, where it kept its books and bank accounts; and from its office there it paid its employees within and without the state, purchased supplies, employed labor, maintained telephone and telegraph lines, entered into contracts for transportation of crude oil, and carried on various other activities connected with, and in furtherance of, its pipe-line operations. It owned and operated a pipe line, extending through Oklahoma and Missouri to a certain point in Illinois, through which pipe line it conveyed crude petroleum. It was therefore engaged in interstate commerce.

The State of Missouri attempted to collect from it an annual franchise tax, the contention in justification of the tax being that the corporation was also engaged in doing local business; that its ownership and use of property other than the pipe line—such as telephone and telegraph lines, pumping stations, passenger and truck automobiles, etc.—in the State of Missouri, and its various acts and activities within that state amounted to the operation of a strictly local business.

It was conceded by the state that the operation of the pipe line, through which crude oil was transported from Oklahoma,

through Missouri, to a point in Illinois, was interstate business. The court said: "The tax is one upon the privilege or right to do business (State ex rel. v. State Tax Commission, 282 Mo. 213, 234, 221 S.W. 721), and if appellant is engaged only in interstate commerce it is conceded, as it must be, that the tax, so far as appellant is concerned, constitutionally cannot be imposed. It long has been settled that a state cannot lay a tax on interstate commerce in any form, whether on the transportation of subjects of commerce, the receipts derived therefrom, or the occupation or business of carrying it on. [Citing authorities.] Plainly, the operation of appellant's pipe line is interstate commerce and beyond the power of state taxation."

Referring to the question whether the owning of property in the State of Missouri, which was used in connection with the principal business engaged in by the corporation constituted the doing of a local business, the court said: "The business actually carried on by appellant was exclusively in interstate commerce. The maintenance of an office, the purchase of supplies, employment of labor, maintenance, and operation of telephone and telegraph lines and automobiles, and appellant's other acts within the state, were all exclusively in furtherance of its interstate business, and the property itself, however extensive or of whatever character, was likewise devoted only to that end. They were the means and instrumentalities by which that business was done and in no proper sense constituted, or contributed to, the doing of a local business. The protec-

tion against imposition of burdens upon interstate commerce is practical and substantial and extends to whatever is necessary to the complete enjoyment of the right protected."

The defendant in the case at bar was unquestionably engaged in interstate commerce. In the case of Robbins v. Shelby County Taxing District, 120 U.S. 489, 7 S.Ct. 592, 596, 30 L.Ed. 694, decided in 1887, the court said: "The negotiation of sales of goods which are in another state, for the purpose of introducing them into the state in which the negotiation is made, is interstate commerce."

In Real Silk Hosiery Mills v. Portland, 268 U.S. 325, 45 S.Ct. 525, 69 L.Ed. 982, the Supreme Court quoted with approval the above language from the Robbins case. And in Crenshaw v. Arkansas, 227 U.S. 389, 33 S.Ct. 294, 296, 57 L.Ed. 565, the court referred to the Robbins case as "The leading case", and said that it had been strictly adhered to since its decision.

In McClellan, Tax Collector v. Pettigrew, 44 La.Ann. 356, 10 So. 853, Pettigrew, the defendant, was the agent of the Seth Thomas Clock Company, a corporation domiciled in the State of New York, and solicited orders for the sale of clocks, with a view of introducing them into this state. He exhibited samples, obtained orders, forwarded them by mail to the clock company in New York, which shipped the clocks to points convenient to the purchasers in Louisiana. The clocks were delivered by the company at its own expense. The state sought to collect a license tax from Pettigrew, the agent of the cor-

poration. The court followed the Robbins case, supra, and held that Pettigrew was not liable for the license tax because the soliciting of the orders by him in this state, for the sale of clocks in another state, did not constitute a sale of the clocks but a negotiation for the sale, and that the clause of the Constitution of the United States which declares that Congress shall have the power to regulate commerce among the several states extends to negotiations for the sale of manufactured articles solicited in another state. It was held, to abstract from the syllabus, that: "any license tax imposed upon an agent or solicitor for soliciting orders for said goods by sample is in violation of said clause of the constitution of the United States."

We quote the following text from 15 Corpus Juris Secundum, Commerce, § 18, page 279: "Transactions of interstate commerce comprehend every negotiation, initiatory and intervening act, contract, trade, and dealing between citizens of any state or territory, or the District of Columbia, with those of another political division of the United States, which contemplates and causes an importation into the state, either of goods, of persons, or of information."

As to the general rule that a state is prohibited from levying a tax on interstate commerce, this court, in State v. Schofield, 136 La. 702, 718, 67 So. 557, 563, said: "And it is well settled that a license imposed upon the agent of a foreign corporation selling articles of commerce which at the time of the sale are in another state operates in restraint of interstate com-

merce, and in violation of the interstate commerce clause of the Constitution of the United States." (Citing Tax Collector v. Pettigrew, supra, and numerous decisions by the Supreme Court of the United States.)

In State v. Read & Nott, 178 La. 530, 152 So. 74, it was held that a license or occupational tax, as applied to a local representative of a non-resident commercial firm who solicits orders for merchandise to be shipped direct to buyers, was unconstitutional, being an unauthorized burden on interstate commerce. In that case, the agent of the non-resident commercial firm kept an office in the City of Shreveport, where he displayed samples and took orders, and also solicited orders as a drummer within his district. The orders were sent direct to the principal without the state, where they were accepted, filled, and shipped direct to the persons by whom they were ordered.

Act No. 8 of the Third Extra Session of 1935 denies to any foreign corporation doing business in this state the right to present a judicial demand before any of the courts of the state unless and until it pays all license and excise taxes required of such corporations doing business in the state. In Graham Mfg. Co. v. Rolland, 191 La. 757, 186 So. 93, 94, this court held that this law was not applicable to a foreign corporation having no office or business establishment of any kind in Louisiana, which employs travelling salesmen who come into the state and solicit and receive orders for merchandise. The Graham Manufacturing Company is a Connecticut corporation, and

through one of its salesmen sold merchandise to the defendant Rolland. Rolland failed to pay for the goods, and the plaintiff brought suit. Rolland sought to have the suit dismissed on the ground that plaintiff had not paid its license tax. The facts were that orders were received in this state by plaintiff's representative, the orders were sent by mail by the travelling salesman to the office of the corporation in Connecticut, where the orders were accepted or rejected. When the orders were accepted, the goods were shipped to the customer who ordered them. In holding that the statute referred to was not applicable to the plaintiff, this court said: "It is well settled that a state statute imposing a license tax upon foreign corporations doing business in the state is not applicable to a foreign corporation which has no office or place of business in the state, and which sells goods in the state only on orders received through traveling salesmen,—the orders being accepted in the foreign state, and the goods being shipped from that state. Such a state statute cannot be construed so as to apply to such business as we have described because such business is interstate commerce, and is therefore exempt from state taxation by the commerce clause in the Constitution of the United States, article 1, § 8, cl. 3, U.S.C.A. Robbins v. Taxing District of Shelby County, 120 U.S. 489, 7 S.Ct. 592, 30 L.Ed. 694; Caldwell v. State of North Carolina, 187 U.S. 622, 23 S.Ct. 229, 47 L.Ed. 336; International Text-Book Company v. Pigg, 217 U.S. 91, 30 S.Ct. 481, 54 L.Ed. 678, 27 L.R.A.,N.S., 493, 18 Ann. Cas. 1103; People's Tobacco Co. v. American Tobacco Co., 246 U.S. 79, 38 S.Ct. 233, 62 L.Ed. 587, Ann.Cas.1918C, 537; Real Silk Hosiery Mills v. City of Portland, 268 U.S. 325, 45 S.Ct. 525, 69 L.Ed. 982; McClellan v. Pettigrew, 44 La.Ann. 356, 10 So. 853; Pegues v. Ray, 50 La.Ann. 574, 23 So. 904; State v. Schofield, 136 La. 702, 67 So. 557; State v. Paramount Publix Corporation, 178 La. 818, 152 So. 534."

Each of the cases cited above is pertinent to the issues involved in the case at bar. It is unnecessary to review them further.

We find no merit in counsel's suggestion that the tax imposed by Section 17, Act No. 33 of 1938, partakes of the nature of a use tax. The tax is a license tax pure and simple, and it was so designated in the State's petition, wherein it was alleged that the defendant was due the State $250, "being the license tax due under the provisions" of said act.

For the reasons assigned, the judgment appealed from, declaring unconstitutional that portion of Section 17, Act No. 33 of 1938, which requires every person, firm, or corporation, not being a regular retail merchant in the State of Louisiana, to pay a license tax for the privilege of displaying samples, models, goods, wares, or merchandise in any hotel, hotel room, store, storehouse, house, or other place, for the purpose of securing orders for the retail sale of such goods, wares, or merchandise, or others of like kind or quality, either for immediate or future delivery, is affirmed.

O'NIELL, C. J., does not take part.

LAND, J., absent.