51 N.J. Super. 201 (1958)
143 A.2d 600
TOWNSHIP OF MOUNT HOLLY, PLAINTIFF,
v.
JOSEPH OMAR, DEFENDANT.
Superior Court of New Jersey, Burlington County Court, Law Division.
Decided June 13, 1958.
*202 Mr. Robert W. Criscuolo argued the cause for the plaintiff (Messrs. Parker, McCoy and Criscuolo, attorneys).
Mr. William G. Freeman argued the cause for the defendant.
McGANN, J.C.C.
This is an appeal from a conviction in the Municipal Court of the Township of Mount Holly under a municipal ordinance entitled "An Ordinance of the Township of Mount Holly in the County of Burlington to Further Control Canvassing and Soliciting Within Said Township and Providing Penalties for the Violation Thereof." The authority for the enactment of the ordinance is found in N.J.S.A. 40:48-2.
The defendant was employed under an agreement with C.W. Stuart & Co., a corporation of the State of New York, with its principal office in Newark, New York. His employment agreement designated him as being a sales person and provided, among other things, that he would canvass and solicit bona fide orders for landscaping, fruit and plant materials on behalf of the C.W. Stuart & Co. His sales work consisted, generally, of contacting home and farm owners directly, and soliciting from door to door. Upon obtaining a sales order, the same would be forwarded to C.W. Stuart & Co. and the material provided for in the sales order would be shipped by the company directly to the customer. The consideration or sales price of the material would be paid by the customer to C.W. Stuart & Co. at its office in Newark, New York. The material purchased would be *203 shipped by mail to the customer. The customer, upon receipt of the merchandise, generally trees and other nursery stock, would then plant the same in keeping with a previously designed plan and agreement made by and between the defendant and the customer. With each contract, there was a form of "replacement guarantee" which in substance provided for replacement of all trees and nursery stock which did not live through the first year.
The defendant Omar contends that he was an independent sales person engaged in interstate commerce and that each of the transactions in question constituted a form of transaction in interstate commerce.
The plaintiff township contends that the ordinance above mentioned requires any person desiring to solicit in the Township of Mount Holly to first register with the chief of police. The chief of police has no discretion under the ordinance to grant or refuse a permit. The permit, generally, is obtained by the applicant after giving his name, photographs of his face, other identifying matter and the sum of 75 cents to cover the fee for the registration certificate.
In this case, it is admitted that the defendant failed to register before soliciting orders in the township in question.
The matter is before the court on a trial de novo with most of the facts stipulated. The question to be determined by this appeal is whether or not the ordinance in question violates the defendant's constitutional rights, having in mind that the transactions in question constitute interstate commerce and that the Constitution of the United States, under Art. I, par. 8, clause 3, vests in the Congress of the United States all legislative powers "to regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes."
The appellant relies on the authority of Real Silk Hosiery v. City of Piedmont, 274 U.S. 723, 47 S.Ct. 657, 71 L.Ed. 1326 (1927), which follows the holding in the case of Real Silk Hosiery v. City of Portland, 268 U.S. 325, 45 S.Ct. 525, 69 L.Ed. 982 (1925), in which, among other things, it was decided that a sales person who takes orders for future *204 delivery of merchandise in one state when in fact the merchandise is to be shipped from another state, that such a transaction constitutes interstate commerce and a local regulation requiring a permit upon payment of $1 and an application fee of $12 payable quarterly was an undue burden upon interstate commerce. The defendant also cites Shafer v. Farmers Grain Company, 268 U.S. 189, 45 S.Ct. 481, 486, 69 L.Ed. 909 (1925), in which the Supreme Court said, among other things, that if there is any evil arising out of individual solicitation and sales work in connection with interstate commerce, "the power of correction does not rest with [the state] but with Congress where the Constitution intends that it shall be exercised with impartial regard for the interests of the people of all the states that are affected."
The defendant also cites New Jersey cases, one of which is the case of Dimmig v. Mann, 120 N.J.L. 442 (1938), in which our former Supreme Court, speaking through Justice Bodine, held as follows:
"Apparently there is no legislative authority to regulate those who solicit, in one state, orders for the sale of goods in another state. The reason the legislature has not so provided is apparent. The state and its instrumentalities may not burden interstate commerce by taxation.
The acts of the prosecutors in this case were so similar to the methods employed in soliciting orders for stockings in Real Silk Hosiery Mills v. City of Portland, 268 U.S. 326, 45 S.Ct. 525, 69 L.Ed. 982, that the conviction must be set aside."
The cases cited by the appellant all are examples where a state or municipality imposed a tax or a regulation which burdened interstate commerce and substantially interfered with the free flow of the same.
In a more recent case, Breard v. City of Alexandria, La., 341 U.S. 622, 71 S.Ct. 920, 931, 95 L.Ed. 1233 (1951), Mr. Justice Reed, speaking for the Supreme Court, said:
"`The police power of a state extends beyond health, morals and safety, and comprehends the duty, within constitutional limitations, to protect the well-being and tranquility of a community' [citing Kovacs v. Cooper, 336 U.S. 77, 69 S.Ct. 448, 93 L.Ed. 513 (1949)].
*205 "When there is a reasonable basis for legislation to protect the social, as distinguished from the economic, welfare of a community, it is not for this Court because of the Commerce Clause to deny the exercise locally of the sovereign power of Louisiana. Changing living conditions or variations in the experiences or habits of different communities may well call for different legislative regulations as to methods and manners of doing business. Powers of municipalities are subject to control by the states. Their judgment of local needs is made from a more intimate knowledge of local conditions than that of any other legislative body. We cannot say that this ordinance of Alexandria so burdens or impedes interstate commerce as to exceed the regulatory powers of that city."
In the above mentioned case there was an ordinance that prohibited promiscuous calling at homes and going from door to door soliciting. The ordinance provided that one should have the "consent of the owners of the residences solicited." The solicitors in question were operating in interstate commerce and delivering the merchandise (magazines and other periodicals), but forwarding the same to the subscribers in interstate commerce through the mail.
In the case of City of Manchester v. Leiby, 117 F.2d 661, (1 Cir. 1941), where representatives of a religious sect known as Jehovah's Witnesses went from door to door soliciting subscriptions and selling magazines of a religious nature without applying for badges as specified in a local ordinance regulating Newsboys and Bootblacks and other persons selling or exposing for sale newspapers, books, pamphlets or magazines, they and the Watchtower Bible and Tract Society, after having been prosecuted on numerous occasions for failure to comply with the local ordinance, sought to invoke the equitable jurisdiction of the U.S. District Court to restrain "repeated criminal prosecution" in the municipal court because of their failure to comply with the terms of said ordinance. They argued, among other things, that the ordinance in question violated the provisions of the First Amendment providing "freedom of speech, press and religion." The District Court sustained this view; but on appeal the Circuit Court of Appeals reversed, and, inter alia, stated 117 F.2d at page 666:
*206 "Even the exercise of religion may be at some slight inconvenience in order that the state may protect its citizens from injury. Without doubt a state may protect its citizens from fraudulent solicitation by requiring a stranger in the community, before permitting him publicly to solicit funds for any purpose, to establish his identity and his authority to act for the cause which he purports to represent."
The Supreme Court denied certiorari in this case. 313 U.S. 562, 61 S.Ct. 838, 85 L.Ed. 1532 (1941).
On a similar question dealing with the right to exercise reasonable police power, a Florida court held:
"This clause was not intended to inhibit the states from promulgating and enforcing police regulations even though such acts may incidentally or indirectly affect interstate commerce." McInerney v. Ervin, 46 So.2d 458 (Fla. Sup. Ct. 1950).
Also, in the case of Allen B. DuMont Laboratories v. Carroll, 36 F. Supp. 813 (D.C. 1949), affirmed 184 F.2d 153 (3 Cir. 1950), it was held that where there is only a partial exercise by Congress of the power to regulate interstate commerce, the state may freely legislate upon phases of the commerce that are left unregulated by Congress, and in such cases it must be clear that the federal provisions are inconsistent with those of the state to justify the thwarting of state regulation. In this case, also, the Supreme Court denied certiorari. 340 U.S. 929, 71 S.Ct. 490, 95 L.Ed. 670 (1951).
This subject is covered by many eminent text writers and authorities, e.g., 15 C.J.S. Commerce § 14, p. 271; 7 McQuillin on Municipal Corporations, sec. 24.378, p. 304; Rhyne, Municipal Law, sec. 26-48, p. 599 (1957), wherein he states, inter alia:
"Ordinances requiring solicitors to register with local police authorities and to obtain a permit before engaging in business activities within the city have been held valid provided they are not found arbitrary. Thus an ordinance requiring non-resident solicitors to register and making it mandatory upon the city clerk to issue a license to every registered person was held valid * * *."
*207 It seems clear from a careful reading of the cases and text writers that the authority of Congress in regulating interstate commerce is supreme and plenary; but this does not prohibit incidental state regulation in the exercise of its police power in order to protect the safety and social well-being of its people so long as the regulation does not burden or impede interstate commerce. The obtaining of a permit and the payment of a nominal fee for the same in order to carry out needed local regulations does not constitute a burden on interstate commerce and I find that the ordinance in question in this regard is not unconstitutional. Therefore, the conviction below should be affirmed.