84 N.J. Super. 333 (1964)
202 A.2d 186
CITY OF CLIFTON, PLAINTIFF-RESPONDENT,
v.
DONALD P. WEBER, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 2, 1964.
Decided June 26, 1964.
*334 Before Judges GAULKIN, LEWIS and FULOP.
Mr. David B. Buerger of the Pennsylvania Bar, admitted pro hac vice, argued the cause for appellant (Messrs. Stryker, Tams & Dill, attorneys; Mr. William L. Dill, Jr., of counsel).
Mr. Nicholas G. Mandak, First Legal Assistant, argued the cause for respondent (Mr. Sam Monchak, City Counsel, attorney).
The opinion of the court was delivered by LEWIS, J.A.D.
Defendant Weber was convicted in the Municipal Court of the City of Clifton for violation of an ordinance which required a permit for house-to-house soliciting or canvassing. The Passaic County Court affirmed the conviction following a trial de novo on the transcript. The defendant appeals.
At the hearing in the municipal court Weber entered a plea of not guilty. He admitted, through his trial counsel, that he had solicited orders for cutlery at private homes in the City of Clifton without applying for the required permit. He claimed that the local ordinance,[1] as applied to his activities, *335 was invalid because it worked an undue and discriminatory burden upon the flow of interstate commerce, in violation of Article I, section VIII, of the United States Constitution, citing among other cases State v. Mauer, 75 N.J. Super. 90 (Cty. Ct. 1962).
Two witnesses testified. Sergeant Gula of the Clifton Police Department appeared on plaintiff's behalf and described the procedure utilized in processing a request for a solicitor's permit. He explained that an applicant fills out a form at the police record bureau, submits it with a $3 fee to the office of the city clerk, and is then fingerprinted and photographed. The length of time involved in the accomplishment of those preliminary steps is, according to Gula, "anywhere from 10 to 15 minutes." The fingerprints are forwarded to the FBI in Washington, D.C., and the New Jersey State Police in Trenton to ascertain whether the applicant has ever been convicted of a crime. The officer said, "the actual investigation and the issuance of the permit takes anywhere from ten to twenty-one days. There is no set standard, it may be nine, ten, eleven, twelve, thirteen."
Harry Schultz, a division sales manager of Wear-Ever Aluminum, Inc., testified for defendant. On direct examination he was asked to approximate the number of municipalities a solicitor would have to frequent in the course of a year in order to remain in business. The reply was "Well, most of our people [defendant was one of 82 distributors under Schultz' jurisdiction] work in Bergen and Passaic County, and there are over 100 municipalities in both these counties." There is no proof that any other municipality had an ordinance similar to Clifton's, or that defendant was actually disadvantaged or delayed in any other municipality. In discussing the possible effect a delay of 10 to 21 days might have, the witness stated, "Well, we know that other companies are competing for the dollar and if they get there before we do we find it difficult to make the sale."
It is conceded on appeal that defendant was engaged in interstate commerce. The sole question before us is whether *336 his conviction should be overturned by virtue of the alleged unconstitutional effect of the ordinance under which prosecution obtained. Defendant does not challenge the validity of any particular term or provision of the ordinance in question. His appeal is founded upon a twofold argument: (a) "The cumulative effect of municipal registration of solicitors as required by the Clifton Licensing Ordinance is an unconstitutional burden on interstate commerce," and (b) "The waiting period for the issuance of a solicitor's license by the City of Clifton is an unconstitutional burden on interstate commerce."
It is firmly established that a municipality may, in the legitimate exercise of its police power, regulate the business of house-to-house soliciting or canvassing through the enforcement of licensing requirements. Moyant v. Paramus, 30 N.J. 528, 544 (1959). An otherwise reasonable police regulation may affect interstate commerce so long as it does not place an undue burden thereon. Nippert v. City of Richmond, 327 U.S. 416, 66 S.Ct. 586, 90 L.Ed. 760 (1946).
The argument advanced by Weber is that an ordinance should be held unconstitutional "if the cumulative effect of complying with similar ordinances of several municipalities within which a solicitor does business, imposes an undue burden on interstate commerce." He relies heavily upon the decision in Nippert. That case involved an ordinance of the City of Richmond, Virginia, which imposed a direct tax upon persons engaged in business as solicitors in the municipality and also upon sales arising only under contracts requiring interstate shipment of goods. The United States Supreme Court found that, unlike the New York sales tax at issue in McGoldrick v. Berwind-White Coal Min. Co., 309 U.S. 33, 60 S.Ct. 388, 84 L.Ed. 565 (1940), the Richmond tax "inherently bore no relation to the volume of business done or of returns from it." (327 U.S., at p. 427.) Moreover, although the ordinance was alleged to be neither prohibitive nor discriminatory on its face, the court held that its practical *337 effect was to favor the local merchant as against the out-of-state one. It was the unbalanced tax burden to which its opinion referred when it spoke of the "cumulative effect" which a series of similar ordinances would bring to bear upon the salesman whose business requires him to continually move from place to place. Parenthetically, it might be observed that the court chose not to deal with the nontax regulatory features of the ordinance. (See footnote 2, 327 U.S., at p. 418, 66 S.Ct. 586.) However, the burdensome effect of municipal regulations upon interstate commerce, in other than tax cases, may also be unconstitutional. Real Silk Mills v. City of Portland, 268 U.S. 325, 45 S.Ct. 525, 69 L.Ed. 982 (1925). It was recognized in Breard v. Alexandria, 341 U.S. 622, 640, 71 S.Ct. 920, 931, 95 L.Ed. 1233, 1247 (1951), that different considerations apply where legislation is not an added financial burden upon sales in commerce or an exaction for the privilege of doing interstate commerce, but rather a regulation of local matters. The court said:
"When there is a reasonable basis for legislation to protect the social, as distinguished from the economic, welfare of a community, it is not for this Court because of the Commerce Clause to deny the exercise locally of the sovereign power * * *."
In Moyant v. Paramus, supra, our Supreme Court dealt with a local ordinance which made it unlawful to engage in the business of a solicitor or canvasser without first obtaining a permit or license. In order to be licensed one had to obtain a medical certificate, post a $1,000 bond and pay a fee of $25. The police chief was empowered to conduct an investigation and determine whether or not the license should issue. The court determined that the fee, the bond and the medical certificate requirements constituted unreasonable burdens on interstate commerce, and the ordinance provisions as to those mandates were invalidated. It was stated:
"Just complying with ordinance provisions as comprehensive and detailed as those of Paramus in every town will quickly consume a great amount of time and money, with correspondingly less time to do business and a smaller return from it." (30 N.J., at p. 551) *338 Mr. Justice Hall, writing for the unanimous court, made this significant observation:
"The way in which the business [of house-to-house canvassing] is necessarily conducted opens the way for fraud, deceit and dishonest dealing by the unscrupulous, even though by only a minority of those engaged in it, with redress difficult or practically impossible since the solicitor is very frequently a stranger and quickly gone from the locality. Resort may also be easily had to the business by the criminally minded for the purpose of obtaining admittance to private homes in furtherance of some present or future unlawful object. 40 Am. Jur., ibid., § 7, p. 912. Courts have universally upheld the amenability of the business to reasonable police regulations. Town of Irvington v. Schneider, 120 N.J.L. 460 (Sup. Ct. 1938), affirmed 121 N.J.L. 542 (E. & A. 1939), reversed on other grounds Schneider v. State of New Jersey, 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939); Dziatkiewicz v. Township of Maplewood, 115 N.J.L. 37 (Sup. Ct. 1935); 7 McQuillin, Municipal Corporations (3d ed. 1949), § 24.378; Rhyne, Municipal Law (1957), § 26-44; 40 Am. Jur., ibid., § 16, p. 921. Registration and licensing are commonly accepted as such reasonable regulatory means since they require identification of the solicitor which will deter the dishonest and aid future location of the person if that be necessary. 40 Am. Jur., ibid., § 30, p. 938; Rhyne, ibid., § 26-48. Schneider and Dziatkiewicz indicate, in line with general authority, that a requirement of disclosure of detailed personal facts, including a photograph and fingerprints and information as to any criminal record, by the applicant will not be struck down as unreasonable in view of the reasons dictating regulation. The power cannot, however, be exercised for `a purpose to shield the local shopkeepers from lawful competition, and thus to serve private interests in contravention of common rights; * * *.' [citations omitted]." (30 N.J., at pp. 544-545)
Quite clearly, the holding in Moyant with respect to the cumulative burden on commerce was prompted by and directed to the afore-mentioned objectionable features in the Paramus ordinance and not to the requirement that the chief of police conduct an investigation and determine whether or not the license should issue.
The need for such an investigation necessarily implies that a reasonable time must be afforded a municipality in order to enable it to make adequate inquiries and to obtain essential reports concerning an applicant; otherwise, licensing regulations to protect the municipal citizenry could be meaningless. *339 There is no evidence that the anticipated total time as estimated by Sergeant Gula was unreasonable or unnecessary. As a matter of fact, on oral argument, defendant's counsel admitted its reasonableness if it were limited to a single community.
Even if other municipalities should adopt similar ordinances, there is no suggestion in the record that they would not effectively cooperate in processing license applications in their respective communities, at least to the extent of accepting the result of one another's investigation or FBI and State police reports. While it is true that similar ordinances may be adopted by many or all other communities, we may not assume that the administrative procedure would be the same in each municipality. We cannot substitute speculation for proof that plaintiff's business would be subjected to an unreasonable delay or interference, or that the cumulative effect of the legislation in controversy would be unconstitutional.
There must be compelling evidence to overcome the presumption of validity that attaches to a municipal ordinance. Defendant failed to demonstrate that his business had been or would be injured, and the trial court specifically found that there were not "sufficient facts before the court" from which it could conclude that interstate commerce had been unreasonably burdened. We agree.
Judgment affirmed.

APPENDIX

"REVISED ORDINANCES OF CLIFTON.

ARTICLE 3. CANVASSERS AND SOLICITORS.

24-30. PERMIT REQUIRED.
No person shall solicit or call from house to house in the city to sell or attempt to sell goods by sample or to take or attempt to take orders for the future delivery of goods, merchandise, wares, or any personal property of any nature whatsoever, or take or attempt to take orders for services to be furnished or performed in the future, without first having received a written permit therefor. (8-2-60, § 1.)

*340 24-31. APPLICATION FOR PERMIT; CONTENTS THEREOF.
(a) Any person desiring a permit to canvass or solicit in the city shall file, on a form to be supplied by the chief of police, an application with the chief of police or officer in charge at police headquarters, stating:
(1) Name of the applicant;
(2) Permanent home address;
(3) Name and address of employer or firm represented;
(4) Place or places of residence of the applicant for the preceding 3 years;
(5) Date on which he desires to commence canvassing or soliciting;
(6) Nature of merchandise to be sold or offered for sale or the nature of the service to be furnished;
(7) Whether or not the applicant has ever been convicted of a crime, misdemeanor, or violation of any ordinance concerning canvassing or soliciting, and if so, when, where, and the nature of the offense.
(b) Said application shall also be accompanied by a letter or other written statement from the individual, firm or corporation employing the applicant, certifying that the applicant is authorized to act as the employer's representative.
(c) No such application shall be filed more than 6 months prior to the time such canvassing or soliciting shall commence. (8-2-60, § 2.)

24-32. APPLICATION FEE.
Upon the filing of the application, a fee of $3.00 shall be paid by the applicant to the city clerk for the use of the city to defray the cost of investigating, photographing, fingerprinting, processing and issuing said permit. (8-2-60, § 4.)

24-33. INVESTIGATION; ISSUANCE OF PERMIT; TERM.
The chief of police shall cause such investigation to be made of the applicant's business and moral character as he deems *341 necessary for the protection of the public good. This investigation shall include the photographing and fingerprinting of the applicant. If, as a result of such investigation, the applicant's character or business responsibility is found to be unsatisfactory, the chief of police shall endorse his disapproval and the reasons therefor on the application and the permit shall not issue. If, as a result of such investigation, the applicant's character and business responsibility is found to be satisfactory the chief of police shall endorse his approval and execute a permit to be formally issued by the city clerk. Said permit shall show the name, address, photograph and thumb print of the permittee, the kind of goods or services to be sold or performed thereunder, the date of issuance and the date on which said permit shall expire, which shall be December 31st of the year in which issued. The permit shall be signed and sealed by the city clerk. (8-2-60, § 3.)"
FULOP, J.C.C. (temporarily assigned, dissenting).
With great deference, I feel compelled to dissent from the affirmance of the conviction in this case.
I concur in much of the exposition of the law in the court's opinion. I differ in the respects hereinafter stated.
I am convinced that a delay of 10 to 21 days for the issuance of a permit to solicit is unreasonable in view of the fact that every other municipality may impose the same delay if Clifton may. It is my view that such a delay constitutes an undue burden on interstate commerce.
It seems to me that no proof is required of the existence of other like ordinances and practices thereunder. It is sufficient that if Clifton's practice is sustained, all other municipalities have power to do the same.
There is no basis for assuming that Clifton will accept the results of investigation by other municipalities. There is no proof that it will, and the ordinance makes no provision for it. If such sources of information were available, then the failure to issue any permit in less than ten days would be all the more unreasonable.
*342 I conceive that it is the subject of judicial notice, as a matter of common knowledge, that a regulation which may be imposed in 86 municipalities of Passaic and Bergen counties, including Teterboro with a population of 22, requiring a retail, house-to-house salesman of cutlery to make 86 annual applications, pay a fee of $3 for each, and wait 10 to 21 days before pursuing his business in each municipality imposes a great, and, in my opinion, an undue burden on that business. It seems obvious that a salesman following up a potential customer in a municipality is not likely to succeed in making a sale after a three-week delay. Therefore no proof of hardship should be required. See Nippert v. City of Richmond, 327 U.S. 416, 66 S.Ct. 586, 90 L.Ed. 760 (1946), and Moyant v. Paramus, 30 N.J. 528 (1959).
The making of a complete investigation for criminal record of every applicant before issuing a permit serves no sufficiently useful purpose to justify the burden upon the majority of applicants without criminal records. Those with records are unlikely to leave photographs and fingerprints at police headquarters for fear of a small fine, especially if they are planning criminal activity. Only the legitimate traders are inconvenienced. The requirement is discriminatory since it is not applied to deliverymen for local merchants and others. Furthermore, the proof that so much time is required for such an investigation is unconvincing, and the inference is warranted that the purpose of the delay is to discourage competition with local merchants. See N.J. Good Humor, Inc. v. Board of Commissioners of Bradley Beach, 124 N.J.L. 162 (E. & A. 1940).
It was not decided or implied in Moyant v. Paramus, supra, that it is permissible for a municipality to delay the issuance of the permit for so long a time in every case. That case held that it is permissible to require the furnishing of information and submitting to photographing and fingerprinting "to deter the dishonest and aid future location of the person if that be necessary." If the court had intended to hold that the permit may be delayed in every case for a full criminal investigation, *343 it would undoubtedly have included that statement in its complete and scholarly exposition of the subject. The question was not before the court.
Since the permit may be denied for good cause, it undoubtedly follows that its issuance may be delayed for good cause in appropriate cases. But that is no warrant for a uniform practice of delay in all cases.
The defendant should be permitted to raise the issue of the invalidity of the practice under the ordinance without first applying for a permit and being delayed. The administrative practice is contemplated by the provisions of the ordinance and is not administrative misconduct. Hence the invalidity is on the face of the ordinance. The city admits the universal and unvarying practice. The city did not raise the objection below but sought and here seeks a determination on the merits. There has been real and substantial interference with defendant's business and the serious legal questions raised should be decided in the public interest. Walker, Inc. v. Borough of Stanhope, 23 N.J. 657, 660 (1957); Hyman v. Long Branch Kennel Club, Inc., 115 N.J.L. 123 (E. & A. 1935).
For these reasons I vote to reverse the conviction and vacate the sentence
NOTES
[1] A copy of the ordinance as printed in the record is appended to this opinion.