Statement of the Case.
NICHOLLS, J.
This suit was brought originally against the “Arkansas Southern Railroad Company.”
Subsequently, upon motion of counsel for defendant, and by agreement of both parties, the Rock Island, Arkansas & Louisiana Railroad Company was made defendant; it assuming all liabilities of the Arkansas Railroad Company.
Upon being so substituted, the last-named company filed an exception that plaintiff’s petition disclosed no cause of action against either the original defendant or against it.
The court sustained the exception and dismissed the suit, and plaintiff appealed.
In the petition so excepted to, it was alleged that “on the 28th day of December, 1904, petitioner’s husband was crossing and walking in a northerly direction on the track of the said railway company, near the town of Dubaeh, in Lincoln Parish, La., as he was compelled to do to get from his home to hi? work, when a north-bound passenger train of the said railroad company, negligently, recklessly, and carelessly run over him, killing petitioner’s husband; that petitioner’s husband was killed wholly without fault on his part, and solely because of the gross negligence, recklessness, and wanton carelessness of the said railroad company, its officers, agents, and employés; that the said locomotive of said railroad company designated as “Engine No. 1,” which was attached to and pulling the said train was old, out of repair, dangerous, and unfit for the purposes for which it was being used; that the air brakes and air on the said locomotive were out of repair, unsafe, and unfit to perform their proper functions; that the said condition of the said locomotive was, to the knowledge of said corporation, its officers, agents, and employés, such as to render its use reckless and wanton negligence; that her said husband was deaf, and did not see nor hear the said train; that the engineer on the said locomotive, on the said date of her husband’s death, saw him at least 600 feet before the said locomotive struck and killed him, recognized him, and knew that he was deaf, and did not hear nor see the approaching train; that by reason of the old, dilapidated, and worn condition of the said locomotive- and air brakes, and other brakes on said train, the said engineer found it impossible to stop the said train in time to avert the killing of petitioner’s husband; that if the said engine and its equipments had been in proper repair, and in the condition required by law, and fit for the purpose for which they were being used, the said engineer could and would have stopped the said train within a distance of 120 feet and would have averted the killing of petitioner’s said husband; that the said train consisted of the “locomotive,” “tender,” “baggage car,” “smoker,” and ne *323 gro coach combined, and one “passenger coach,” and one extra car, all of which train, except the rear trucks of the rear car passed over the body of the said A. B. Davis, mangling his body and grinding him to death beneath the trucks of the said train; that the railroad tracks of the said Arkansas Southern Railroad Company extend from Eldorado, Ark., in a southerly direction to Winnfield, La., a distance of about 100 miles; that the said Arkansas' Southern Railroad Company is engaged in the carrying of freight and passengers for hire.
Petitioner averred amicable demand without avail.
In view of the premises, she prayed that the said Arkansas Southern Railroad Company be cited and served with a copy of this petition according to law, and after due legal delays and trial hereof on the merits, that petitioner have and recover judgment in her favor against the said Arkansas Railroad Company, for the full sum of $10,000, for all necessary orders, decrees, costs, and general relief.
Opinion.
The petition in this ease is undoubtedly lacking in allegations which are customarily employed in actions such as the one before us. It is open to criticism in that respect, and should properly be amended. We do not think, however, that the missing allegations were of character such as to have warranted the drastic remedy of the dismissal of the suit being applied. The tendency of modern practice is to yield as little as possible to technicalities, and to afford aid as far as practicable to the filing of amendments which work no injury and prevent useless delays and costs. When the lawmaker in the Code of Practice established and classified exceptions of different kinds to be advanced at different stages of the suit, and to be followed by announced consequences, it was evidently intended that they should be resorted to under the circumstances stated, and be followed by the results declared. It was not contemplated that they should be replaced by a sweeping blanket exception which would absorb and swallow up all the other exceptions and throw the plaintiffs summarily out of court. The exception of no cause of action in which no specific objections to the petition are set up, and which remits the plaintiff to an ascertainment of what they may be to the trial of the exception, is calculated to work injury, and in many jurisdictions the defendant is required by express statutes to specify in detail what the objections are so as to enable plaintiff an opportunity to remove the same. Th'e exception in this state is some time levelled at the allegations of the petition and sometimes it reaches back of the petition to the cause of action itself, but up to this time it has never been exacted that the objections should be set out specifically, but we should see that each exception should be made to 'perform the function properly appertaining to it, and not be allowed to have substituted for it another, and be lost, merged, and confounded. The exception of no cause of action should not and cannot be sustained when a judgment of some kind, let it be ever so small, could be legally rendered on the allegations supported by evidence. In the case before us, should the plaintiff, in the absence of any exception of vagueness and uncertainty, make good all the allegations of her petition, the basis for a judgment for, at least, nominal damages, would have been afforded. Under such circumstances, the violation of a legal right would have been established which would entitle the plaintiff to damages to some extent.
It is contended by the defendant that if the engineer of the train saw the plaintiff’s husband on the track, as he should have seen him in the exercise of proper care, and had at once used all the instrumentalities which had been furnished him to the extent *325 of his ability to prevent the accident (but they were unavailing), the company would be freed from all responsibility in the premises, if the husband was a trespasser on the track, however defective might have been the appliances which had been furnished by the company to the engineer to stop the train.
Its argument is that “there is no negligence where there is no inseparable correlative duty.” There can be no obligation, no duty without some one to whom that obligation or duty is owing. When the defendant started its train on the road on the morning ■of the accident there was absolutely no relationship whatever between the deceased and the defendant. And up to the very instant of his death, there existed between them no possible relationship except that of a trespasser to a proprietor in the legitimate operation of naturally dangerous instrumentalities on his own premises. The •only negligence alleged is the failure of an obligation that had not arisen, the violation of a duty that did not exist at the time of the alleged violation. 12 L. R. A. 322, 69 L. R. A. 513, and notes thereunder; Burbank v. I. C. R. R. Co., 42 La. Ann. 1156, 8 South. 580, 11 L. R. A. 720; O’Connor v. Railroad Co., 44 La. Ann. 339, 10 South. 678; Fredericks v. Railroad Co., 46 La. Ann. 1180, 15 South. 413; Elliott on Railroads, pp. 1252-1254.
The owner of premises may presume that he is alone in their enjoyment, except as he may have given invitations to others, and he is entitled to the freedom of action which his exclusive possession warrants. “This freedom of action is interrupted only by the ■discovery of the presence and peril of uninvited trespassers. 69 L. R. A. 515, note; 23 A. & E. of Law, pp. 735, 747, et seq.”
“Railroads are bound to exercise due care to avoid injury after the discovery of the trespassers’ peril. There is seriously divided authority on the requirement of a railroad company to exercise care in the discovery ■of the trespassers’ peril, but no court, so far as we can learn, has ever advisedly and seriously supported the proposition that a railroad company is responsible to a trespasser for want of ordinary care in the use of appliances, or that the railroad company owes any duty to a trespasser bn its track up to the time of the trespass.”
“To recognize a cause of action in plaintiff’s petition would be to hold that the deceased, a pedestrian trespasser had the right of way over defendant’s tracks; that he was entitled to special protection in corresponding ratio to his multiplied' infirmities and negligence; that the company was bound to anticipate his presence on its track at any time; that he had a right to demand that the railroad company discover him on its tracks before reaching him, and to expect of it to stop its train. without regard to expense or delay until his attention could be attracted and he could be enticed or removed from its main line for the train to pass. The only negligence alleged is negligence antecedent to the accident and antecedent to the trespass, the running by a defendant of a defective engine over its own track, the use of a defective appliance on its own premises and property.”
The specific objections urged in defendant’s brief to plaintiff’s petition are:
“(1) She does not allege default of minor children which is an essential condition of her individual action.
“(2) She does not allege any suffering on the part of deceased.
“(3) She does not allege any survival of any cause of action in her favor through the death of her husband.
“(4) She does not allege want of support or other pecuniary damage or injury, does not even allege loss of companionship, love, or affection, or any damage sentimental, or otherwise.”.
There is no allegation in plaintiff’s petition of any damage or injury whatever.
The plaintiff, on the other hand, maintains as a matter of law that:
“Common carriers are required to run reasonably safe locomotives, and in such condition of repair as to prevent loss of life and property, *327 by the proper use of them by the engineer after the discovery by him of the person on the track.
“If the servants of a railroad company are required to use ordinary care to avert loss after the discovery of a person walking on the railroad track, it would follow as a natural conclusion that the railroad companies would be likewise required to use reasonable, ordinary care in furnishing those servants with such instruments and appliances as would enable them to avert accident with reasonable effort, after the discovery of danger. It is a settled principle that masters are required to furnish reasonably safe appliances for their workmen, and, as a matter of public policy, it ought to apply with equal force that they should be required to furnish reasonably safe appliances for the purpose of protecting the public from danger. It would be futile to reguire of a railroad company to keep a lookout for persons on its tracks unless such appliances were furnished to the employes as could be effectually used after the discovery of the peril to such person to prevent injury or death.
“In the case of Railroad v. Railroad, 9 C. C. A. 314, 60 Fed. 993, cited in the note subjoined to the case of Bogan v. Railroad Co., 55 L. R. A. 418, the doctrine in the English case of Davies v. Mann, was applied so as to permit of recovery for damages to a car caused by a collision at a point, where two railroad tracks crossed at a grade, even upon the assumption that the plaintiff was guilty of negligence; it appearing that the defendant’s engineer saw the plaintiff’s train, and could have stopped in time to have avoided the accident, but for the negligence of the defendant in sending out its train equipped with poor brakes.
“In the case here at issue the petition shows that the last link in the chain of causes was the old, worn out condition of the locomotive and its improper equipment, and this we maintain is the proximate cause of the injury for which defendant should be held responsible.”
Plaintiff cites Williams v. Railroad. Co., 114 La. 13, 37 South. 992; Railway Co. v. Ives, 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485; Railroad v. Harvin (Tex. Civ. App.) 54 S. W. 629; Railroad Co. v. Smith, 62 Tex., 252; Union Pac. Ry. Co. v. Cappier (Kan.) 72 Pac. 281, 69 L. R. A. 513; McGuire v. Railway Co., 46 La. Ann. 1543, 16 South. 457. And, particularly, Thompson v. Railroad Co. (Utah) 52 Pac. 92, 40 L. R. A. 172, 67 Am. St. Rep. 621, in which it was held that;
“If a railroad company knowingly placed in operation upon the public street a defective car that could not be controlled, because the injury complained of was occasioned by such defective brakes and appliances, and the motorman was unable to avoid the effect of the contributory negligence of the deceased because of such defects, then it could be properly said that the defendant’s negligence was the proximate cause of the injury.”
There is no force in the objection urged that the plaintiff did not allege default of minor children. Her right of action is not conditioned upon the husband having left minor children. If there were such children, and defendant believed they were necessary parties to the suit, it should have so alleged, pleaded an exception of nonjoinder, and insisted upon their being made parties, and not have set up the objection under an exception of no cause of action. See Eichorn v. N. O. & C. R. R. Co., 112 La. 251, 36 South. 335, 104 Am. St. Rep. 437.
The second objection that plaintiff did not allege any suffering on the part of deceased could not be alleged nor proved as it is stated that the deceased had been instantly killed.
The third objection set up in the brief is not tenable. Upon the arising of the facts stated in the petition the law itself conferred upon the widow a right of action. There was no necessity for the plaintiff to allege legal consequences which defendant is presumed to know without allegation.
The fourth objection furnishes good ground for complaint; but we do not think the objection should have been raised as it was through the exception of “no cause of action.” If the death of the husband was brought about through a tort, the wife was thereby, ipso facto, deprived of the support to which she was entitled from her husband under the law itself; the party through whose fault it occurred violated her rights in so doing, and she was entitled, on showing such violation, to a judgment for at least nominal damages independently of establishing any particular amount of damages. When the plaintiff alleged that the defendant owed her $10,000' for the reasons thereafter stated, and prayed for judgment against it for that amount, she- *329 substantially and practically alleged that she had suffered damage to that extent.
The pleading, however, was certainly very loose, and defendant was entitled through the appropriate exception to have had the plaintiff ordered to make specific allegations as to the fact of damage, the amount thereof, and of what elements composed, and itself relieved from answering until this should be done, in order that it might meet and repel the demand if it could. It is entitled to that information and relief now.
We cannot recognize as being correct the proposition that if plaintiff’s husband was killed by defendant’s train when a trespasser on its track, it would be relieved from legal responsibility for the killing, if its engineer, in the exercise of proper vigilance, had discovered him thereon, and immediately on his doing so had used to their utmost capacity (though unsuccessfully) the instrumentalities which had been furnished him to stop the train. That it would make no difference in the legal situation that such appliances were not such as the situation would call for to avert the injury. Mongogna v. Ill. Cen. R. R. Co., 39 South. 701, 115 La. 597.
It is true that the company may and could not have anticipated that plaintiff’s husband would be on its tracks at the particular time and place he was, but it was bound to know that in the nature of things there would be trespassers at some time, and in some place upon it, and it was bound to exercise reasonable care in keeping a lookout for them and providing reasonable precautions for their protection and for avoiding disaster.
It is a mistake to suppose that the obligation of a railroad to provide proper and sufficient appliances to guard against injury to persons and property is an obligation confined, as to the effect that fact may have to the relations between the railroad company and its employés and passengers.
We have frequently held that railroad companies by and through the very fact of their organization take upon themselves the obligation of protecting the general public from injuries occasioned by the improper operation of their trains. The particular dangers from such operation are not enumerated nor are the particular methods for protection against them, for the reason that in the nature of things they cannot be all foreseen, but these matters are left to be determined by the facts of the particular cases as they arise.
The books are full of decisions where individuals connected in no way with the railroad companies have obtained judgments against them for injuries which they have sustained resulting from the bad condition of the train and its equipment as the proximate cause of those injuries.
Individuals who may be trespassers upon the track of a railroad company do not, by reason of that fact, cease to be members of the “general public,” and no longer entitled to protection from injury from the violation by railroad companies of their general obligations to the “public.” That fact is not altered, because, in the consideration of the liability of the companies, and in determining whether the latter have exercised a sufficiently vigilant lookout against dangers ahead, it would be a relevant question as to whether the party injured was a trespasser upon the defendant’s track, and when, where, and under what circumstances he was such.
Defendant argues as a matter beyond dispute that plaintiff’s husband was, in fact, a trespasser; but we are not prepared to say that, as against an exception of “no cause of action” which acknowledges the truth of plaintiff’s allegations, we would under plaintiff’s allegations be justified in dealing with her husband as a trespasser. A person walking across or along a track is not necessarily a trespasser, and plaintiff alleges that her husband was wholly without fault, and was killed through the reckless and wanton negligence of the defendant company.
We have concluded that under the plead *331 ings in this case the exception of “no cause of action” should not have been sustained and the suit dismissed.
The judgment appealed from is therefore annulled, avoided, and reversed, and the cause reinstated on the docket of the district court, and remanded for further proceedings with the right reserved to the plaintiff to amend her petition, and with the right reserved to the defendant to take such exceptions in the ease as from the nature and facts of the case are allowable.
MONROE and LAND, JJ., concur in the decree.
PROVOSTY, J.,
concurs in the decree, but dissents from the proposition that a railway-company owes a duty in advance to a trespasser on its track.