## NORM ADVERTISING, Inc., v. PARKER.

### No. 5351.

Court of Appeal of Louisiana. Second Circuit.

March 1, 1937.

Hawthorne & Files, of Bastrop, for appellant.

Edward L. Gladney, Jr., of Bastrop, for appellee.

HAMITER, Judge.

A written contract forms the basis of this suit. According to its provisions, plaintiff, a foreign corporation, agreed to reserve for defendant the right to use certain copyrighted advertising matter known as the "Golden Days Series," and to furnish mats to him each month during a period of one year. For this right and service defendant contracted to pay the sum of $156, plus the postage necessary in shipping the advertising matter, such consideration to be paid in monthly installments of $13 each.

Plaintiff alleged in its petition a fulfillment of the contract on its part and a breach thereof by defendant. Judgment against defendant for the sum of $156.35 is sought.

Defendant excepted to the jurisdiction of the court, averring that plaintiff corporation has not complied with the laws of this state for doing business herein, and is therefore denied the use of the courts of Louisiana under the provisions of Act No. 8 of the Third Extraordinary Session of the Legislature for 1935. This exception was overruled.

An exception of no cause or right of action was then tendered. This was likewise overruled.

In answering, defendant admitted the execution of the contract, restated his objection relative to plaintiff corporation's noncompliance with the laws of Louisiana, and, in the alternative, averred that the contract was procured through fraudulent inducements and misrepresentations.

After a trial of the case on its merits, judgment was rendered in plaintiff's favor as prayed for. This appeal was perfected by defendant.

The issues formed by the various pleadings present two questions for determination: (1) Was the court vested with jurisdiction of the case? (2) Was the contract procured through fraudulent representations? These will be discussed in the order listed.

Act No. 8 of the Third Extraordinary Session of 1935 provides in part: "No foreign corporation doing business in this State shall be permitted to present any judicial demand before any court of this State, unless and until it has complied with the laws of this State for doing business herein, and unless and until it has paid all taxes, excises and licenses due to the State, provided that nothing in this act shall be construed to prevent the bringing of a cause of action against any such foreign corporation."

According to the evidence and an agreed statement in the record, plaintiff is a corporation organized under the laws of the state of New York with its principal place of business in the city of New York. It has not complied with the laws of Louisiana for doing business herein. Salesmen of the company are sent into Louisiana and other states to interview merchants and obtain orders for copyrighted advertising. When obtained, they are sent to the office in New York for acceptance or rejection. If an order is approved and accepted, the desired materials are forwarded by mail direct to the subscriber. The merchant does not purchase the advertising matter, but is granted the exclusive right to use it for a specified time in a designated territory. The traveling agent of the corporation is authorized to accept an initial cash payment on the stipulated contract price,

but his connections with the transaction are terminated when the written order is mailed to the New York office for consideration. Within a two-year period preceding the trial of this case, plaintiff corporation approved and accepted at its New York office, 23 orders executed by merchants of Louisiana.

The contract on which this suit is based was solicited by one of plaintiff's traveling agents, who resided in New York City, while in the town of Bastrop. After the order was signed by defendant, the agent mailed it to his employer. Defendant made no initial or part payment on the recited consideration. The exclusive territory reserved to defendant was the town of Bastrop. Approval of the written order was granted by plaintiff corporation on its receipt in New York, and a letter of acceptance and a copy of the contract were dispatched to defendant. Shipment of the required material was then begun and was continued in accordance with the provisions of the written instrument. No portion of the agreed contract price has been paid by the defendant.

It is our opinion that plaintiff corporation was not doing business in the state of Louisiana within the meaning and intendment of the above-quoted statute which is relied on and pleaded by defendant in bar of this suit.

The transaction contemplated and provided for in the written contract was one of interstate commerce. A general definition of interstate commerce is the free interchange of commodities between citizens of different states, without regard to state lines. 12 Corpus Juris, verbo "Commerce," § 2.

The fact that the contract in question grants merely the right to use the copyrighted product within a designated territory, instead of providing for a complete relinquishment of title to it by plaintiff, does not prevent the transaction from being interstate in character. It was said by Chief Justice Marshall in the celebrated case of Gibbons v. Ogden, 9 Wheat. 1, 189, 6 L. Ed. 23, that: "Commerce, undoubtedly, is traffic, but it is something more—it is intercourse."

In the case of Butler Bros. Shoe Co. v. United States Rubber Co. (C.C.A.) 156 F. 1, 17, it is stated that: " * * * but all interstate commerce is not sales of goods. Importation into one state from another is the indispensable element, the test, of interstate commerce; and every negotiation, contract, trade, and dealing between citizens of different states, which contemplates and causes such importation, whether it be of goods, persons, or information, is a transaction of interstate commerce."

This statement is quoted approvingly in the case of International Text-Book Co. v. Pigg, 217 U.S. 91, 30 S.Ct. 481, 487, 54 L. Ed. 678, 27 L.R.A.(N.S.) 493, 18 Ann.Cas. 1103.

Plaintiff maintains no agent, business, branch office, or goods in this state, and does not transact a substantial part of its ordinary business here. When its traveling agent came into Louisiana, called upon defendant, and solicited and received his written order, there was yet no agreement between these parties litigant. This order ripened into and became a binding contract only when it was accepted by plaintiff at its domicile. After the acceptance, the product was shipped with the written understanding that the stipulated deferred payments were to be made at New York. It is true that plaintiff's traveling agents are authorized to receive initial payments upon the signing of orders by the merchants, but this is of no importance in so far as the question under discussion is concerned. If and when an initial payment is so received, it accompanies the order and becomes the property of plaintiff corporation only on approval of such order. Nor could the securing by plaintiff's agents of numerous orders in this state affect the situation. All of them were of like character and were interstate commerce transactions.

The power to regulate the commerce among the several states is a prerogative possessed by the Congress of the United States. Article 1, § 8, Federal Constitution. A state has no power to restrict or impose burdens on that character of commerce. In the case of International Text-Book Co. v. Pigg, supra, the Supreme Court of the United States, speaking through Mr. Justice Harlan, said: "It is the established doctrine of this court that a state may not, in any form or under any guise, directly burden the prosecution of interstate business. But such a burden is imposed when the corporation of another state, lawfully engaged in interstate commerce, is required, as a condition of its right to prosecute its business in Kansas, to make and file a statement setting forth cer-

tain facts which the state, confessedly, could not control by legislation."

Plaintiff, in this last-mentioned case, was a Pennsylvania corporation. It maintained agents in the state of Kansas whose duties were to solicit and obtain applications for scholarships in its correspondence course, and to collect all fees and payments under the contracts made. A statute of Kansas required the filing of a certificate as a condition precedent to the maintenance of an action in that state by a foreign corporation. The statute was held to be unconstitutional and void, because the court found that plaintiff was doing business in Kansas and that its transactions were interstate in their nature.

It was stated in People's Tobacco Co. v. American Tobacco Co., 246 U.S. 78, 38 S. Ct. 233, 235, 62 L.Ed. 587, Ann.Cas.1918C, 537, that: "As to the continued practice of advertising its wares in Louisiana, and sending its soliciting agents into that State, as above detailed, the agents having no authority beyond solicitation, we think the previous decisions of this court have settled the law to be that such practices did not amount to that doing of business which subjects the corporation to the local jurisdiction for the purpose of service of process upon it. Green v. Chicago, B. & Q. R. Co., 205 U.S. 530, 51 L.Ed. 916, 27 S.Ct. 595; Philadelphia & R. R. Co. v. McKibbin, 243 U.S. 264, 268, 37 S.Ct. 280, 61 L. Ed. 710." This quotation is used by the Louisiana Supreme Court in Premeaux v. Henry Ford & Son, 155 La. 106, 98 So. 856.

Defendant relies on the case of International Harvester Co. v. Kentucky, 234 U.S. 579, 34 S.Ct. 944, 58 L.Ed. 1479. The United States Supreme Court comments on that decision in the People's Tobacco Co. Case, supra, in the following language: " * * * but in that case the facts disclosed that there was not only a continuous course of business in the solicitation of orders within the State, but there was also authority upon the part of such agents to receive payment in money, checks and drafts on behalf of the company, and to take notes payable and collectible at banks in Kentucky; these things, taken together, we held amounted to doing business within the state of Kentucky in such manner as to make the Harvester Company amenable to the process of the courts of that State."

It is a general rule of interpretation that a state statute, such as the one here invoked, will be construed, if possible, as having no application to transactions within the protection of the commerce clause of the Federal Constitution. This is done in the interest of harmony between such statute and the supreme law of the land. 14A Corpus Juris, § 3992.

We therefore hold that plaintiff's prosecution of this suit is not affected by the above-quoted statute. Sillin et al. v. Hessig-Ellis Drug Co., 181 Ark. 386, 26 S. W.(2d) 122; Outcalt Advertising Co. v. Citizens' State Bank, 147 Minn. 449, 180 N. W. 705; Bogata Mercantile Co. v. Outcalt Advertising Co. (Tex.Civ.App.) 184 S. W. 333.

The second defense urged by defendant is that he was induced to sign the purchase order through fraudulent representations of the agent. This involves only an issue of fact which was resolved in plaintiff's favor by the trial judge. A careful study of the evidence has not convinced us that he committed manifest error in his finding.

For the foregoing reasons, the judgment is affirmed, with costs.