2 So.2d 177

CONNER v. HARPER.

No. 35621.

April 28, 1941.

Joseph S. Guerriero, of Monroe, for plaintiff-appellant.

Sholars & Gunby and Frank O. Looney, all of Monroe, for defendant-appellee.

HIGGINS, Justice.

The plaintiff is seeking to recover cer. tain bonds and interest coupons aggregating $5,133, alleged to have been illegally retained by the defendant as his attorney's fee; and, in the alternative, if the bonds have been previously disposed of by the defendant, the plaintiff prays for a moneyed judgment for that amount, with legal interest from judicial demand until paid. The plaintiff alleges that he does not owe the defendant an attorney's fee, but, should the Court conclude he is entitled to one, that the amount the defendant has charged is exorbitant.

The defendant filed exceptions of no right and no cause of action, which were sustained by the trial judge, and the suit was dismissed. The plaintiff has appealed.

It is alleged in the petition that on October 12, 1936, the plaintiff entered into a written contract with J. E. Blevins, a bond salesman, whereby he agreed to exchange $14,500 worth of paid-up stock of the Peoples Homestead & Savings Association for $14,500 worth of City of Mobile bonds bearing 4% interest, the delivery of which bonds was to have been made within forty-five days thereafter; that at the expiration of this period of time, Blevins, instead of making delivery of the City of Mobile bonds, offered to deliver to the plaintiff certain bonds of the County of Hildago, Texas, which plaintiff refused to accept; that on March 1, 1937, not having received any bonds from Blevins, the plaintiff had his wife call upon the defendant attorney with a letter which he had written authorizing the defendant to contact Blevins and demand the delivery of the bonds in compliance with the terms of the contract; that at that time, the defendant attorney stated to the plaintiff's wife that he would not charge any fee for writing a letter to Blevins making the demand, because of his

friendship to the plaintiff; that there was never any agreement between the plaintiff and the defendant regarding a fee; that the defendant led the plaintiff to believe that he would make Blevins pay it; that on April 7, 1937, in accordance with the instructions of the defendant, the plaintiff filed a charge of embezzlement against Blevins in Morehouse Parish and delivered the warrant to the defendant; that thereafter the defendant wrote numerous threatening letters to Blevins over a period of about fourteen months and during that time he secured, in installments, $14,500 worth of Hildago County Bonds, plus interest amounting to $300 ($333.33); that during all of the time the defendant was receiving the bonds in installments from Blevins, he stated that he expected to secure the full amount thereof for the plaintiff and would use every effort to make Blevins pay him his attorney's fee, although there was no law requiring Blevins to do so; that on Saturday, April 2, 1938, the defendant telephoned the plaintiff informing him that he had finally received all of the bonds and wished to see him and his wife at his office on the following Monday morning at 9 o'clock; that plaintiff and his wife went to the defendant's office and after a conference of about two hours, the defendant counted out $10,024 worth of Hildago County Bonds and gave them to plaintiff; that upon plaintiff inquiring about the balance of the bonds, the defendant told him that he was retaining the remaining $4,500 worth of the bonds and interest coupons as his attorney's fee for handling the matter; that he handed them a statement showing that plaintiff was receiving $10,024 worth of the bonds and that he (defendant) was retaining four $1,000 bonds and one $500 bond, together with the interest coupons attached amounting to $333.33; that plaintiff was "shocked" upon receiving this statement from the defendant, because he was under the impression and had been led to believe that he would not owe the defendant any fee, as he (defendant) would make every effort to collect it from Blevins; that, thereupon, " * * * petitioner protested to Judge Harper (defendant) about the taking of these bonds as his fee and he (defendant) then stated that he would hold the bonds until he could collect the fee from J. E. Blevins and your petitioner then left Judge Harper's (office) with this understanding * * *"; that the following day, April 5, 1938, because plaintiff was unable to leave his work on the railroad, he sent his wife to defendant's office with a list of questions which he had written, as a protest against the defendant deducting such a large sum as his attorney's fee; that on the same day, defendant wrote plaintiff's wife a letter, explaining his action in deducting the attorney's fee and stating that unless the plaintiff apologized to him, in writing, he (defendant) would not make any further attempt to secure the fee from Blevins, but that he would retain the bonds that he had in his possession in settlement thereof; that at the same time, he also wrote the plaintiff a similar letter; that plaintiff was afraid the defendant would make no further effort to collect the fee from Blevins and, therefore, wrote the apology demanded of him by the defendant; that the defendant then wrote Blevins certain letters demanding that he pay the attor-

ney's fee, which Blevins refused to do; that Blevins informed the plaintiff that the defendant stated to him and his secretary that he did not intend to charge the plaintiff any fee but that on the day Blevins delivered the last of the bonds to the defendant, the defendant told Blevins that the plaintiff was going to lose one-third of the bonds, as he was going to retain that amount as his attorney's fee; that Blevins remarked at that time that he saw no reason for the plaintiff to lose anything, as he had delivered all of the bonds in accordance with the agreement; that the retention of one-third of the bonds and the coupons was contrary to any agreement between the parties, but that, if the defendant is entitled to an attorney's fee, the amount he has charged is exorbitant and beyond reason; that the plaintiff has always been ready and willing to pay the defendant a reasonable attorney's fee for his services in collecting the bonds; and that the defendant was not authorized to retain the bonds for a fee and should be ordered to deliver them to the plaintiff, and upon his failure to do so, the plaintiff is entitled to recover a moneyed judgment for the amount thereof.

There is annexed to the petition a series of letters in which it is stated that Blevins was a rascal who had run afoul of the law and did not own any property that could be seized and that the defendant was continually writing and telephoning him, in order to secure the delivery of the bonds, and to request the payment of the attorney's fee.

The exceptions of no right and no cause of action are predicated upon two grounds:

(1) That from the facts shown by the petition and the annexed documents it appears there was accord and satisfaction of a disputed claim between the parties and, therefore, plaintiff is estopped from asserting his right to institute suit, and (2) that the petition does not state any facts tending to show that the fee charged by the defendant is unreasonable or exorbitant.

The petition clearly states that there was no agreement between the parties to pay the defendant a fee, contingent or otherwise, and the annexed documents tend to show that, while the defendant was engaged as an attorney to secure the delivery of the bonds, nothing was said about his fee or compensation for his services. These documents also show that the defendant endeavored to make Blevins pay the attorney's fee and admitted to the plaintiff that, under the law, he could not force Blevins to do so. Therefore, in the absence of a contract or agreement between the parties as to whether or not there would be any compensation or fee to be paid to the defendant, the plaintiff is entitled to have the court determine if he is liable for the fee and, if so, whether the amount charged by the defendant is reasonable or exorbitant. Hunt v. Orleans Cotton Press Co., 2 Rob. 404; Terriberry, Rice & Young v. Stewart, 9 La. App. 708, 120 So. 70; Dinkelspiel & Hart v. Pons, 119 La. 236, 43 So. 1018; and Adams v. Simon, La.App., Orleans Parish, 144 So. 73.

Counsel for the defendant contends that the plaintiff has barred and estopped himself from the right to insitute suit to

have the question of liability and the amount of the fee determined because of accord and satisfaction of the claim between the parties. He states that the elements of estoppel based upon facts gathered from the petition and the annexed documents are that the professional services were rendered under a written contract of employment in the form of a letter; that a written account was rendered and tender made thereunder; and that while the amount charged as his fee was disputed, the plaintiff accepted the tender by taking the $10,024 worth of bonds and retaining them, citing the case of Berger v. Quintero, 170 La. 37, 127 So. 356.

In the Berger v. Quintero case supra, the notary who made a partition of the succession property paid to Quintero, as the attorney for Berger, the amount due him as one of the heirs. Quintero made up a statement showing the attorney's fee and the costs of court, as well as the balance due the plaintiff in that case. He annexed his check to the plaintiff's order for the amount due him and mailed the statement and the check to the plaintiff. The plaintiff alleged that he never accepted the check nor approved of the settlement offered. The defendant answered the suit averring that the amount remitted was the correct balance due and pleaded that, as the defendant caused the check to be certified by the bank on which it had been drawn, he thereby accepted it and further, that as the check was sent to him with the declaration that it was in settlement of the balance due, he thereby accepted the check in full satisfaction of the claim. The un-

disputed evidence showed that the plaintiff, notwithstanding his protest, retained the check for three years and then had it unqualifiedly certified by the bank and held it up to the time of instituting the suit. The trial judge sustained the plea of estoppel and this Court affirmed the judgment stating:

"Under section 187 of the Negotiable Instruments Law (Act 64 of 1904), 'Where a check is certified by the bank on which it is drawn, the certificate is equivalent to an acceptance,' and under section 188 thereof 'Where the holder of a check procures it to be accepted or certified the drawer and all indorsers are discharged from liability thereon.' Therefore, the situation is the same as between plaintiff and defendant, as if the check had been presented for payment and had been paid.

"The plea of estoppel, in our view, is well founded. The claim was a disputed one. If plaintiff was not satisfied with the settlement tendered, he should not have retained the check, and caused it to be certified by the bank upon which it was drawn, but should have returned it, in the absence of a waiver of the condition attached to the remittance. By retaining the check, and causing it to be certified, he is now precluded from rejecting it, and suing defendant upon the entire claim. [Citing authorities based upon check transactions.]" (Brackets ours.)

In the instant case, the defendant tendered the plaintiff his own property in the form of bonds. A check was not involved and, therefore, the Negotiable Instruments Statute, Act No. 64 of 1904, up-

on which the Berger v. Quintero case, supra, was based is not applicable here. The petitioner alleged and the annexed documents tend to corroborate the statement that he protested against the defendant retaining the bonds and that he at no time acquiesced in or approved of defendant's action. It is also stated in the petition that the bonds were left in the defendant's possession upon his assurance that after the written apology was given, he would make further efforts to collect the attorney's fee from Blevins. No such factual situation was presented in the above authority relied upon by the defendant and the case is plainly distinguishable from the instant one.

As to the exception of no cause of action leveled at the allegations in the petition with reference to the alleged exorbitant amount charged as a fee, it is suffice to say that if there are not sufficient allegations of fact contained in the petition, an exception of vagueness would be available to the defendant. Bates v. Prudential Ins. Co. of America, 192 La. 1029, 190 So. 120; Brunson v. Mutual Life Ins. Co. of New York, 189 La. 743, 180 So. 506, and Davis v. Arkansas Southern R. Co., 117 La. 320, 41 So. 587.

Counsel for the defendant argues that we should pass upon the question of liability and the amount of the fee due for defendant's services, as it would only be an idle gesture to remand the case to the lower court when there are sufficient allegations of fact in the petition on which to decide the case. It may be that on the trial on the merits the evidence will show

that the plaintiff owed the defendant a fee for his services and that the amount charged is reasonable, but, in the absence of any proof in the record, and without the trial judge having first passed upon those issues, we shall refrain from expressing our views thereon.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from is annulled and set aside, the exceptions of no right and no cause of action are overruled, and the case is remanded to the district court for further proceedings consistent with the views herein expressed.

O'NIELL, C. J., does not take part.