By Act No. 359 of 1940, Webster J. Arceneaux was authorized to file against the State of Louisiana through the Louisiana Highway Commission suit for "damages resulting from the accident and personal injuries alleged to have occurred on August 24th, 1935, by the negligence of the Louisiana Highway Commission through its employees and/or agents."
Accordingly, on September 27, 1940, Arceneaux, in the Twenty-fourth Judicial District Court for the Parish of St. Charles, filed this suit alleging that on the 24th of August, 1935, he sustained serious personal injuries when the automobile in which he was riding was overturned as the result of striking "a hole, or break, in the surface" of the highway. He alleged fault on the part of the Highway Commission "through its employees and/or agents acting within the scope of their employment, in leaving a dangerous depression, hole or obstruction on the said public highway unguarded and without warning signs, notices and/or danger lights * * *."
And he further alleged "that said Highway Commission, its employees and/or agents were also negligent in failing to keep said highway in a proper state of repair, and more particularly in failing to repair this depression, hole or obstruction."
He did not expressly charge that the depression or defect had been in existence for any particular period of time, nor that the Highway Commission, prior to the accident, had knowledge, actual or constructive, of its existence.
The Department of Highways of the State of Louisiana, successor to the Louisiana Highway Commission, appeared and filed exceptions asserting that the petition "does not disclose a legal cause or right of action against defendant." Before this exception could be heard in the District Court, plaintiff, with leave of court, filed a supplemental petition in which he made the following allegations:
"VII. a. Petitioner alleges upon information and belief that the said hole or break in said highway had been there for several months prior to the date of said accident; that it was a matter of common knowledge amongst the people who lived in the vicinity that the said hole or break in said highway existed.
"VIII. a. Petitioner is informed and so believes and alleges that said Highway Commission, and/or its agents and employees acting within the scope of their employment, had knowledge of said hole or break in said highway, or in the alternative that said Highway Commission and/or its agents and employees, acting within the scope of their employment, should have known of the existence of said hole or break in said highway."
When this supplemental petition was filed, defendant filed another appearance "reiterating and reaffirming" the exceptions already filed, and excepting to the supplemental petition on the ground that it "changes the issue" and "makes allegations * * * which are contrary to the allegations set forth in the original petition."
There was judgment maintaining the exception of no cause or right of action and dismissing the suit. Plaintiff has appealed.
Counsel for defendant argue that "In a suit against the State or a political corporation for damage or injury resulting from a defect in a public way under its control, in order to state a cause of action the plaintiff's petition must allege notice, either actual or constructive, of the defect by the defendant before the damage or injury was caused thereby."
Starting with the premise that since the original petition did not contain an allegation charging defendant with knowledge, actual or constructive, of the alleged defect, but on the contrary, contained allegations which counsel say should be construed as showing that there was no such knowledge, counsel contend that the supplemental petition is inconsistent with and contradictory of the said original petition since it, the said supplemental petition, charges that there was such knowledge of the defect.
It is conceded that where immunity has been waived and legislative permission *Page 22 
to sue a state or a political corporation has been granted, such permission does not include admission of liability and that consequently a plaintiff must show all of the essential facts from which liability results, and it is also conceded that in such a suit as this, where liability is said to result from a defect in a street or a roadway, there is no liability unless the defendant is shown to have had prior knowledge of the existence of the defect, or unless it is shown that it actually existed for so long a time prior to the accident that it is fair to presume that there was such knowledge, or unless, under the circumstances, it is proper to say that, as a matter of law, the defendant ought to have had such knowledge. In other words, the rule in suits against the State or against one of its political corporations, where immunity has been waived, is exactly the same as that which has been recognized in suits against municipalities, and that rule has been many times stated, notably in Miller v. City of New Orleans, La.App., 152 So. 141, 142, in which we said: "* * * Municipalities are liable only if the authorities have had actual or constructive knowledge * * *."
It is true that in the original petition there is no charge that there was such prior knowledge that the defect existed, though there are allegations which, according to counsel for plaintiff, may be interpreted as charging that there was such prior knowledge. For instance, in paragraph IX of the original petition it is alleged that the defendant was negligent "in leaving a dangerous depression, hole or obstruction * * * unguarded and without warning signs, * * *".
Counsel point to the word "leaving" and argue that it indicates that there must have been knowledge of the defect; that if one is charged with having "left" a hole unguarded, he is charged by inference with having had knowledge that there was such a hole in existence. Counsel for defendant maintain that no such interpretation may be given to the above-quoted words, and they say, moreover, that there are other allegations which, if true, negative the idea that defendant could have had knowledge of the defect. They point to the charge that the defect was "a dangerous hazard * * * because of its invisibility to motorists on said highway." And they also point to the charge that "said hole or break in the highway was an obstruction beneath the surface of the highway" and to the further allegation that because of this "it was impossible for the operator of said vehicle to have noticed or seen same." We think these last quoted charges have been misinterpreted. They do not mean that the defect could not have been discovered but merely that, prior to striking the defect, it could not have been discovered by a motorist driving an automobile. It is obvious that if there was such a dangerous defect, it could have been discovered by anyone driving a car over it, even though it may have been impossible for the driver of the car to have discovered it as he approached it. Thus the allegation in the original petition that it was invisible to the motorist approaching it is not inconsistent with or contradictory of the charge in the supplemental petition that it had existed for so long a time that the defendant should have had knowledge of it.
The allegation that the defect was an obstruction beneath the surface of the highway has also been misconstrued. All that this means is that it was a hole and not an obstruction raised above the surface. The latter may easily be seen — the former only with difficulty, if at all. In making the allegation that the defect was an obstruction "beneath" the surface, counsel, no doubt, were mindful of our language in German v. City of New Orleans, La.App., 3 So.2d 181, 182, wherein we said: "* * * We have always recognized the distinction between striking an obstruction extending above the surface of the highway, which obstruction should be illuminated by headlights, and the running into a hole or depression in the road against which the lights did not shine and which might be no more noticeable than a shadow on the surface of the road. See Woodley Collins v. Schusters' Wholesale Produce Co., 170 La. 527, 128 So. 469; Kirk v. United Gas Public Service Co., 185 La. 580, 170 So. 1, and Gaiennie v. Cooperative Produce Co., 196 La. 417, 199 So. 377, 379."
On proper interpretation, the original petition does not negative the possibility that the defendant may, and possibly ought to have had knowledge of the alleged defect. If so interpreted, there is nothing in it which is contradicted by the allegations of the supplemental petition, and the only fault which can then be found with the original petition is that it fails to contain an essential allegation — that there was *Page 23 
knowledge. It cannot be said that it contains allegations which destroy the asserted cause of action. The trouble here is not that the petition contains allegations which show that there can be no recovery, but merely that it omits allegations which possibly may be made, and without which no cause of action is shown. Such a petition may be amended if the needed allegations may be supplied. See Reeves v. Globe Indemnity Company,185 La. 42, 168 So. 488, 490, in which the Supreme Court said: "The decisions of this court on this question are in conflict. The early cases held that the amendment could be made. Later, from 1880 to 1922, the decisions were just the contrary, but from the year of 1922 to the year 1934, we uniformly held that where a petition failed to state a cause of action, due to insufficient allegations, an amendment would be allowed." Citing numerous authorities. The Supreme Court went on to say: "This conclusion is not only in accord with the weight of authority, but consonant with considerations of equity and the modern trend of liberality in upholding substantive rights instead of subtle technicalities."
In the Reeves case, supra, the Supreme Court quoted from Petitpain v. Frey et al., 15 La. 195, "The object of article 419, of the Code of Practice, was to prevent new causes of action from being put in a petition which might vary and change entirely the nature of the issue joined; * * * one of the tests for ascertaining whether the substance of a demand is changed by an amendment, is to inquire whether the matters set forth in the two petitions, could have been cumulated in one."
So say we here, that, had the two petitions been incorporated into one, there would have been nothing inconsistent nor contradictory among the various allegations.
Counsel for defendant argue that even though it be permissible for a plaintiff to supply by amendment essential allegations, which may have been omitted from the original petition, where such amendments do not change the issue, still, this may not be permitted after an exception of no cause of action or no right of action has been filed. If they are correct in this, then, whenever a petition omits some essential allegation, the defendant, by filing such an exception, may always prevent an amendment. And the result will be that a dismissal on the exception must follow.
No useful purpose would be accomplished because it is settled that a judgment maintaining an exception of no cause of action or no right of action, based on insufficiency of allegation, cannot form the basis of a plea of res adjudicata — Schneckenberger v. John Bonura Co., Inc., 14 La.App. 692, 130 So. 870; O'Hanlon v. Phœnix Bldg. Homestead Ass'n, 1931, 17 La.App. 673, 137 So. 223; Cornish v. Chaney, 1933, 177 La. 10, 147 So. 363; Interdiction of Giacona, 158 La. 148, 103 So. 721. Nor would a plea of prescription lie to the new suit if filed after prescription had accrued, for the original petition, though defective because of insufficient allegation, would be held sufficient to interrupt prescription. In James v. City of New Orleans, 151 La. 480, 91 So. 846, 848, the Supreme Court said: "* * * As the motion did not set forth a new cause of action, it was an error to say that the cause of action therein referred to was barred by the prescription of one year, subsequent to the filing of the suit. McCubbin v. Hastings, 27 La.Ann. 713; Lanis v. Illinois Central Railroad Co., 140 La. 1, 72 So. 788, citing Missouri, Kansas Texas Railroad [Co.] v. Wulf, 226 U.S. 570, 33 S.Ct. 135, 57 L.Ed. 355, Ann.Cas. 1914B, 134."
All that a plaintiff, whose suit had been so dismissed, would have to do would be to file a new suit. And this is what is sought to be avoided in the jurisprudence which permits amendments which do not change the issue, and which merely supply omitted allegations. But this question is not a new one for it is well settled that such amendments may be permitted even after the filing of an exception of no right of action or no cause of action. In Reeves v. Globe Indemnity Company, supra, the Supreme Court cited many cases recognizing the right to amend, and said that "In some of the cases the courts permitted the amendment even after the exception of no right or cause of action had been sustained."
In Bailey v. Simon, La.App., 199 So. 185, 191, we permitted an amendment after an exception of no right of action had been maintained. The contention of the defendant, as stated by us, was "* * * that, since issue had been joined in the case at the time the exception of no right of action was sustained, the plaintiffs should not now be permitted to amend their petition."
We remanded the matter with instructions to the District Court to permit the needed amendment. *Page 24 
In James v. City of New Orleans, supra, the Supreme Court, in permitting an amendment after the exception had been filed, and, in fact, after the exception had been sustained in the District Court, said: "Plaintiff's motion to amend his petition in this case was prompt enough. A judge of one of the divisions of the court had already ruled that the allegations of the original petition were ample, and had therefore overruled the exception of no cause of action, and the judge of the other division had the second exception of no cause of action, yet under consideration, when plaintiff offered to amend and amplify his petition, by alleging more specifically the reasons why the municipal authorities had been negligent in not observing that the cover of the manhole was defective and dangerous."
For these reasons we feel that the offer to amend in the case at bar did not come too late.
The judgment appealed from is annulled, avoided and reversed, and the matter is remanded to the Twenty-fourth Judicial District Court for the Parish of St. Charles for further proceedings consistent with the views herein expressed and according to law.
Judgment reversed and remanded.