69 So.2d 630 (1954)
REYNOLDS METAL CO.
v.
T. L. JAMES & CO., Inc. et al.
No. 19820.
Court of Appeal of Louisiana, Orleans.
January 18, 1954.
*631 Bienvenu & Culver, H. F. Foster, III, New Orleans, for plaintiff-appellant.
Lemle & Kelleher, Edward S. Bagley, New Orleans, for Aviation Board of City of New Orleans, City of New Orleans, and Indemnity Ins. Co. of North America, defendants-appellees.
Curtis, Foster & Dillon, New Orleans, for T. L. James & Co., Inc., and National Surety Corp., defendant-appellees.
McBRIDE, Judge.
This suit was brought by Reynolds Metal Company, a foreign corporation, against T. L. James & Company, Inc., and its liability insurer, National Surety Corporation, the Aviation Board of the City of New Orleans, and the City of New Orleans, and their liability insurer, Indemnity Insurance Company of North America, for $1,157.89, representing the amount allegedly due plaintiff by all defendants solidarily for damages sustained by a Beach Craft airplane and incidental expenses. The petition alleges that on December 10, 1948, the plaintiff's airplane landed at the Moisant International Airport, which is operated by the Aviation Board of the City of New Orleans and the City of New Orleans, and that the airplane was damaged when its propeller struck a piece of concrete reinforcing wire which was lying in the grass on the airfield. It is alleged that the wire was left hidden from view in said position on the airfield by T. L. James & Company, Inc., which was at the time performing certain construction work at the airport.
All defendants interposed a similar series of exceptions, namely: (1) That plaintiff, a foreign corporation organized under the laws of Delaware, is doing business in Louisiana notwithstanding that it has never qualified to do business in the State, and is therefore prohibited from presenting any judicial demand before any court of this State; that therefore plaintiff has no capacity to prosecute the suit or stand in judgment thereon; (2) that the petition discloses no right of action; (3) that the petition discloses no cause of action; (4) that the petition is too vague, general, and indefinite to permit defendants to plead thereto with safety.
The exceptions were all tried together, and after hearing certain evidence the district judge maintained the exceptions and dismissed the suit. Plaintiff has appealed devolutively from the several judgments.
The exceptions of want of capacity to sue and no right of action are based on the provisions of Act No. 8 of the Third Extraordinary Session of the Legislature of Louisiana of 1935 (now LSA-R.S. 12:211) which read:
"Section 1. Be it enacted by the Legislature of Louisiana, That no foreign corporation doing business in this *632 State shall be permitted to present any judicial demand before any court of this State, unless and until it has complied with the laws of this State for doing business herein, and unless and until it has paid all taxes, excises and licenses due to the State, * * *."
Plaintiff has never qualified to conduct business in Louisiana, so the question then is whether its activities can be said to amount to a carrying on of a domestic business within this State. As stated by the Court of Appeal, Second Circuit, in Proctor Trust Co. v. Pope, 12 So.2d 724, 727:
"No act of the Legislature of this state has attempted to define or say what acts or course of conduct within the state by a foreign corporation shall constitute `doing business' therein. The law making powers of other states, so far as our research has extended, have not ventured to do so. The question has been left to the courts. Each case necessarily must be determined from its own facts. * * *"
The evidence taken on the trial of the exceptions reflects that Reynolds Metal Company is a Delaware corporation having offices in the states of Kentucky and Virginia. It has in Louisiana a sales office equipped with furniture valued at $1,000. The lease covering the office was signed and completed at one of the offices in Kentucky or Virginia; plaintiff employs two or three resident salesmen and a stenographer; none of these local employees have authority to hire or discharge personnel without approval of the home office; the office is furnished with a petty cash fund out of which expenditures for office necessities are made. At times plaintiff advertised its products by sending a van carrying samples to Louisiana, and the salesmen call on likely customers with a view of persuading them to specify and use products manufactured by Reynolds Metal Company on various jobs. These salesmen quote prices and solicit purchase orders, which are transmitted to the home office for acceptance or rejection as the salesmen are clothed with no authority to act on the orders received. In some cases the salesmen are advised of the disposition of orders made by the home office, and the information usually is transmitted by the salesmen to the customers. Plaintiff maintains no warehouse and keeps no goods for sale in Louisiana, and when an order is accepted it is filled by direct shipment from one of the plants outside of Louisiana to the purchaser. At times the salesmen handle complaints from customers, and one of the salesmen said he could accept payments from customers by check which he would have to forward to the accounting department. Our appreciation of the testimony, in which some vagueness exists, is that the yearly sales of the Reynolds Metal Company throughout the United States approximate $77,000,000 as compared with Louisiana sales of $350,000.
The question posed by the exceptions is not new to our jurisprudence. In State v. Read & Nott, 178 La. 530, 152 So. 74, it was held that a state license or occupational tax so far as it applied to local representatives of nonresident commercial firms who merely solicit orders for merchandise to be shipped direct to the buyers was invalid as an unauthorized burden on interstate commerce. The evidence in the case disclosed that the solicitors kept on hand samples of merchandise in which their principals dealt, but no stock of goods out of which anything was sold. All orders were sent to the principals without the State where they were accepted and filled by direct shipment to the person ordering the merchandise.
In State v. Best & Co., 194 La. 918, 195 So. 356, 358, it was held that the statute imposing a license tax on every corporation not being a retail merchant in the State for the privilege of displaying samples in any hotel room for the purpose of securing orders was unconstitutional as interfering with interstate commerce, as applied to a corporation having no place of business in Louisiana which displayed samples in leased hotel rooms through its representative, who was not authorized to deliver any merchandise or to accept payment and was solely authorized to take orders subject to *633 approval of the corporation at its home office in New York, from which the merchandise was shipped to customers. Said the Court:
"* * * We can see nothing in such transactions that can be regarded as a local business. * * *"
In Norm Advertising, Inc. v. Parker, La. App., 172 So. 586, 589, it was held that a foreign corporation not qualified to do a local business was not barred from maintaining a suit here in view of evidence which showed that plaintiff's traveling agent came to Louisiana and called upon the defendant and received his written order which ripened into and became a contract when it was accepted by plaintiff at its domicile. It was shown by plaintiff that after the acceptance of the order the goods were shipped from New York to the merchant. The fact that the agents of plaintiff were authorized to receive the initial payment was said to be of no importance because it accompanied the order and became the property of plaintiff only on approval of the order. The court concluded with this observation:
"It is a general rule of interpretation that a state statute, such as the one here invoked, will be construed, if possible, as having no application to transactions within the protection of the commerce clause of the Federal Constitution. This is done in the interest of harmony between such statute and the supreme law of the land. 14A Corpus Juris, § 3992.
"We therefore hold that plaintiff's prosecution of this suit is not affected by the above-quoted statute. Sillin v. Hessig-Ellis Drug Co., 181 Ark. 386, 26 S.W.2d 122; Outcault Advertising Co. v. Citizens' State Bank, 147 Minn. 449, 180 N.W. 705; Bogata Mercantile Co. v. Outcault Advertising Co., Tex. Civ.App., 184 S.W. 333."
We held in National Pumps Corp. v. Bruning, La.App., 1 So.2d 320, that a foreign manufacturing corporation, which employed an agent to sell its goods, who also represented other parties as a manufacturer's agent, and merely solicited orders which, when accepted at the home office, were filled by shipment from a foreign state, such transactions did not constitute "doing business" in the state so as to require the corporation to comply with the state laws and to pay its taxes, excises and licenses before bringing suit.
In J. R. Watkins Co. v. Goudeau, La. App., 63 So.2d 161, 162, in which numerous authorities are cited, it was held that plaintiff, a foreign corporation, was not engaged in business in Louisiana so as to bring it under the ban of the provisions of the act, although it had dealers in this State whose credit was secured by the signatures of local guarantors and that the dealers were set up in business by plaintiff to sell its products in certain areas. As found by the court in the cited case, the dealers
"* * * are given credit for products of the plaintiff and are required to send in weekly reports of the amount of sales on credit and for cash and of the amount collected on accounts and to remit to plaintiff 60% of the amount of cash taken in each week. Plaintiff has a field man in Louisiana whose duties are to secure new dealers, and when the account of the dealer is to be secured by the signatures of guarantors, to check the public records to ascertain whether or not the guarantors are financially responsible, and then to send the contract to the Home Office for acceptance or rejection. The field man also visits with dealers at times to assist them in any way he can to increase sales and to conduct business for profit of dealers and plaintiff. To this end periodical meetings of dealers are held at certain points, where dealers meet to discuss their problems, and the field man attends these meetings. Dealers are invited, but not compelled to attend these meetings. The dealers pay their own expenses in attending meetings, except that they are invited to lunch at the expense of plaintiff. The right to terminate the contract at will by giving notice in writing is given plaintiff and *634 dealer. Right is given the dealer to return unsold products on termination of the contract, and receive credit for whatever is returned, or cash if he is not indebted to plaintiff. Dealers are encouraged to enlist other persons to engage in business, and if successful, and the prospect is accepted, plaintiff pays the dealer who secured the recruit $60. * * *"
It was stated in People's Tobacco Co. v. American Tobacco Co., 246 U.S. 79, 38 S.Ct. 233, 235, 62 L.Ed. 587, Ann.Cas.1918C, 537, that:
"* * * As to the continued practice of advertising its wares in Louisiana, and sending its soliciting agents into that State, as above detailed, the agents having no authority beyond solicitation, we think the previous decisions of this court have settled the law to be that such practices did not amount to that doing of business which subjects the corporation to the local jurisdiction for the purpose of service of process upon it. Green v. Chicago, Burlington & Quincy Ry. Co., 205 U.S. 530, 27 S.Ct. 595, 51 L.Ed. 916; Philadelphia & Reading Ry. Co. v. McKibbin, 243 U.S. 264, 268, 37 S.Ct. 280, 61 L.Ed. 710."
Neither does the maintenance of a fully equipped and staffed local office by Reynolds Metal Company, nor the fact that the representatives of plaintiff adjusted complaints and sometimes received checks from customers to be sent to the home office place plaintiff in the category of conducting a domestic business. Whether a foreign corporation can be said to be doing business in a state rests fundamentally on a conclusion of ultimate fact. Plaintiff's representatives are merely employed to solicit orders with no power to bind the corporation, and this is the crucial factor in the case. The magnitude and character of the facilities provided the salesmen, and their acts of courtesy to customers in settling complaints where possible, and receiving checks for transmission to the home office of the corporation do not alter the situation.
See Lutz v. Foster & Kester Co., 367 Pa. 125, 79 A.2d 222; Redwine v. Dan River Mills, 207 Ga. 381, 61 S.E.2d 771; Suttles v. Owens-Illinois Glass Co., 206 Ga. 849, 59 S.E.2d 392.
The case of Cheney Bros. Co. v. Commonwealth of Mass., 246 U.S. 147, 155, 38 S.Ct. 295, 297, 62 L.Ed. 632, 637, has no application. Northwestern Consolidated Milling Co., one of the seven corporations involved in the suit, was incorporated under the laws of Minnesota and operated flour mills there, and sold to wholesale dealers throughout the country. It had an office in Massachusetts, where it employed several salesmen for the purpose of soliciting and taking orders from retail dealers and to turn the orders over to the nearest wholesale dealer who filled them, and was paid by the retailer. The Court held that the corporation was engaged in doing business in Massachusetts, saying:
"* * * Thus the salesman, although not in the employ of the wholesaler, is selling flour for him. Of course this is a domestic businessinducing one local merchant to buy a particular class of goods from anotherand may be taxed by the state, regardless of the motive with which it is conducted."
Of particular interest is the fact that plaintiff's local sales office is located in the International Trade Mart Building. It is a well-known fact that the objects and purposes of the International Trade Mart are to bring together, under conditions of mutual convenience and advantage, purchasers and sellers of merchandise, primarily through its establishment of a trade mart for housing displays of both foreign and American merchandise, and also through the dissemination of information of interest to buyers and sellers.
Plaintiff is engaged purely in interstate commerce and cannot be affected by the provisions of Act No. 8 of the Third Extraordinary Session of the Legislature of 1935. This act has no application whatsoever to transactions embraced within the protection of the commerce clause of the *635 Federal Constitution. Const.U.S. art. 1, § 8, cl. 3. Therefore, the trial judge erred in maintaining the exceptions of want of capacity and no right of action.
The exceptions of vagueness and no cause of action address themselves to the insufficiency of the allegations of the petition. Plaintiff merely avers that the piece of wire was left on the airfield in the grass and hidden from view by the defendant, T. L. James & Company, Inc., which was at that time doing construction work at the airport. It is not alleged that the agents or servants of T. L. James & Company, Inc., were in anywise negligent in permitting the wire to remain in said position, or that the Aviation Board of the City of New Orleans or the City of New Orleans, which operate the airport, were negligent in any particular.
The exception of no cause of action was maintained by the trial judge under authority of Lynch v. American Brewing Co., 127 La. 848, 54 So. 123; Morris v. Great Southern Lumber Co., 132 La. 306, 61 So. 383; and Mills v. St. Tammany & New Orleans Ry. & Ferry Co., 139 La. 285, 71 So. 511. These three cases decided between 1911 and 1916 hold that where a plaintiff fails to allege his right to be in the place where the injury occurred or any other fact that would make it the duty of the defendant to look out for his safety, his petition does not set forth a cause of action for damages, and the rules of pleading cannot be relaxed to the extent of allowing the plaintiff to cure the omission from the petition of such essential allegations.
For eighty-five years appellate courts in Louisiana had vacillated as to whether a petition which fails to state a cause of action due to an insufficiency of allegations may be amended after issue is joined. The three cases relied upon by exceptors were decided during that period in our jurisprudence when such amendments were not countenanced.
However, the tendency of modern practice is to yield as little as possible to technicalities and to be liberal in upholding substantive rights instead of subtle technicalities, and to allow amendments to petitions that fail to state a cause of action due to insufficient allegations. Slattery Co. v. F. W. Woolworth Co., 214 La. 876, 39 So.2d 161; Douglas v. Haro, 214 La. 1099, 39 So. 2d 744; Welch v. Jacobsmeyer, 216 La. 333, 43 So.2d 678; Florida Molasses Co. v. Berger, 220 La. 31, 55 So.2d 771. An exception of no cause of action based on an insufficiency of allegations in the petition only amounts to an exception of vagueness, and although it is meritorious and is sustained, the plaintiff will be entitled to amend the petition to supply the want of allegations of fact. Reagor v. First Nat. Life Ins. Co., 212 La. 789, 33 So.2d 521; Continental Ins. Co. v. Madonia, 205 La. 828, 18 So.2d 310; Brunson v. Mutual Life Ins. Co. of New York, 189 La. 743, 180 So. 506; Reeves v. Globe Indemnity Co. of New York, 185 La. 42, 168 So. 488; McCoy v. Arkansas Natural Gas Co., 184 La. 101, 165 So. 632; Lejeune v. Lejeune, 184 A. 837, 167 So. 747; Davis v. Arkansas Southern R. Co., 117 La. 320, 41 So. 587. Such amendment should be allowed even though it is made after the period of prescription has accrued. If the main demand is timely made, that demand is the test and not the sufficiency of the allegations which support it. Reeves v. Globe Indemnity Company of New York, supra; Arceneaux v. Louisiana Highway Commission, La.App., 5 So.2d 20.
The exceptions of vagueness and no cause of action were correctly maintained, but the trial judge should have granted Reynolds Metal Company an opportunity to amend its demand so as to supply all necessary allegations setting forth the negligence of the defendants.
It is ordered, adjudged and decreed that the judgments appealed from insofar as they maintain the exceptions of want of capacity to sue and of no right of action be and they are hereby reversed, and said exceptions are overruled; the judgments insofar as they maintain the exceptions of vagueness and no cause of action are affirmed, and the cause is remanded to the district court in order to permit the plaintiff an opportunity to amend its petition, the amendment to be made within fifteen days *636 from the finality of this decree, and thereafter the matter is to be proceeded with according to law.
Reversed in part, affirmed in part and remanded.